491 So.2d 600 (1986)
Angel ROMERO, Appellant,
v.
WATERPROOFING SYSTEMS OF MIAMI and Kemper Insurance Group, Appellees.
No. BI-440.
District Court of Appeal of Florida, First District.
July 17, 1986.
*601 Mark L. Zientz, of Williams & Zientz, Coral Gables, for appellant.
Jeffrey S. Breslow, of Adams, Kelley & Kronenberg, Miami, for appellees.
FRANK, Judge.
The appellant, Angel Romero, has sought review of that portion of a workers' compensation order setting a date of maximum medical improvement (MMI), denying a request for psychiatric treatment and refusing an award of temporary total disability benefits.
Romero received second and third degree burns on his right arm on October 7, 1983, when he was working for the appellee, Waterproofing Systems of Miami, Inc., installing a roof. A container of hot tar exploded and spewed the scalding liquid on him. Romero was treated at the Cedars of Lebanon Hospital by Dr. Gustavo Leon, a general surgeon. Romero continued to receive medical care from Dr. Leon until January 30, 1984, when Dr. Leon discharged him, concluding that he was able to return to work. Romero had received temporary medical and temporary disability benefits until that date. Romero filed a claim on February 28, 1984, requesting, among other things, a determination of the MMI date, authorization for psychiatric care and temporary disability benefits for the period beginning on January 30, 1984.
Romero was examined by Dr. Robert G. Gilbert on August 13, 1984, and by Dr. Carlos Garcia-Lavin on August 14, 1984. Dr. Gilbert, a general surgeon, conducted a physical exam, procured Romero's medical history, considered the AMA Guide to the Evaluation of Permanent Impairment, and determined that Romero had sustained a 15% permanent impairment to the whole man and that he could continue working with minimal restrictions in his working environment  that is, Romero should not work in temperatures over 85 degrees and *602 should not expose his right arm to the sun. Dr. Gilbert also formed the view that Romero, as of August 13, 1984, had developed a psychological problem due to the burn scar on his right arm and that psychiatric care was warranted. Dr. Gilbert emphasized that most burn victims do not experience the degree of psychological effect that Romero manifested. Dr. Garcia-Lavin, a psychiatrist, examined Romero and concluded that he was experiencing an anxiety response to and was obsessed with the scarring. Dr. Garcia-Lavin prescribed medication to help Romero sleep.
Hearings were conducted on September 6, 1984 and on July 1, 1985 by the deputy commissioner to consider and pass upon Romero's claim. Dr. Gilbert testified telephonically to his findings and conclusions and Dr. Garcia-Lavin's deposition was admitted into evidence. The deposition of Dr. Leon was also entered into evidence. In his deposition, Dr. Leon expressed the view that Romero did not need psychiatric evaluation. Based primarily upon Dr. Leon's deposition and the rejection of Dr. Garcia-Lavin's testimony, the deputy commissioner denied Romero's request for psychiatric care. Romero unsuccessfully moved for a reconsideration of the deputy commissioner's ruling asserting that it was unsupported by competent, substantial evidence. Romero emphasizes this point on appeal and we agree.
Our function is not to reweigh the evidence, however, the critical evidence offered at trial was in the depositions of Dr. Leon and Dr. Garcia-Lavin, thus rendering our vantage point in reviewing the testimony equal to that of the deputy commissioner. Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983). Dr. Leon's testimony, relied upon by the deputy commissioner, was nothing more than his generalized opinion concerning a burn victim's susceptibility to resultant psychological problems. Dr. Leon stated that Romero did not need psychiatric evaluation because:
I have treated many human beings in my profession and all the people who do get burned, do need physical therapy work and training as to how to get back into normal function in society. I don't think psychiatrists are of any help to a person who was burned while he was working, unless he was to have set a fire to himself and then I would definitely send him to a psychiatrist to begin with.
It is our view that Dr. Leon, a general surgeon, not a psychiatrist, expressed an opinion arguably beyond his expertise and of questionable competence. See Metropolitan Transit Authority v. Bradshaw, 478 So.2d 115 (Fla. 1st DCA 1985) (chiropractor's opinion as to claimant's need for psychiatric care was beyond expertise). Perhaps more significant in rejecting Dr. Leon's conclusions is the fact that his treatment of Romero terminated on January 30, 1984. Dr. Garcia-Lavin and Dr. Gilbert, by contrast, examined Romero several months after January 30 and they concluded that he needed psychiatric care. Moreover, Dr. Leon conceded in his deposition taken on July 11, 1985, some six months after he had last treated Romero, that to evaluate Romero's current status he would have to re-examine him. Thus, if Dr. Leon's perceptions of the need for psychiatric treatment were accorded even a slight quality of soundness, they had no probative value in determining Romero's psychological condition subsequent to January 30. Hence, Dr. Leon's testimony, standing alone, could not provide a foundation for the deputy commissioner's finding. See Reynolds v. Neisner Bros., Inc., 436 So.2d 1070 (Fla. 1st DCA 1983) (physician's opinion as to claimant's 1981 impairment based upon a 1979 examination was insufficient).
Dr. Garcia-Lavin's testimony on the other hand, indicating Romero's need for psychiatric care, bolstered by Dr. Gilbert's testimony, was unrefuted. Generally, a deputy commissioner may reject expert testimony when it bears upon matters falling within the sensory experience of any person. Medical questions, however, like Romero's psychiatric condition, are most convincingly answered by experts and a deputy commissioner fails in his or her *603 function where an insufficient reason for rejection of the expert medical testimony exists. See Jackson v. Dade County School Board, 454 So.2d 765 (Fla. 1st DCA 1984) (deputy commissioner erred in rejecting testimony of psychiatric expert that claimant had not reached MMI from a psychiatric standpoint). In the matter at hand, the deputy commissioner rejected Dr. Garcia-Lavin's testimony because: "I was unimpressed with Dr. Garcia-Lavin's testimony... . This doctor did no psychological testing and merely subjectively opined that the claimant was over anxious." Based upon the record before us, we find the deputy commissioner's reasoning and result moderately shocking. The deputy commissioner lacked any factual predicate to undergird his view of that which constitutes reliable psychiatric assessment.
In sum, competent substantial evidence does not support the deputy commissioner's finding that Romero did not need psychiatric care. On the other hand, we find the record does contain competent substantial evidence sustaining Romero's entitlement to such treatment.
The deputy commissioner also erred by finding that the MMI date was August 13, 1984, the day Dr. Gilbert examined and found Romero to be 15% permanently impaired. Conceivably, the deputy commissioner concluded that Dr. Gilbert implicitly set the date of MMI by finding Romero to be permanently impaired. This conclusion, however, ignores Dr. Gilbert's further testimony indicating that psychiatrically Romero had not reached MMI. Cf. Jackson, 454 So.2d at 765. It also overlooks Dr. Garcia-Lavin's testimony as to Romero's psychological problem stemming from the industrial accident.
Finally, the deputy commissioner's denial of temporary disability benefits for the seven month period beginning with the moment when Romero's benefits were suspended on January 30, 1984, and ending on August 30, 1984, is affirmed. Before a claimant is entitled to temporary total disability benefits, there must be competent substantial evidence demonstrating the claimant's inability to work. Palm Beach Newspapers, Inc. v. Roston, 404 So.2d 174 (Fla. 1st DCA 1981). The most convincing medical evidence, however, regarding Romero's ability to work was Dr. Gilbert's testimony that Romero could continue to work but under minimally restrictive circumstances. See Burroughs Corp. v. Glover, 488 So.2d 620 (Fla. 1st DCA 1986). Moreover, in order to be entitled to temporary total disability benefits, a claimant must show, in the absence of medical evidence demonstrating an inability to work, that he engaged in a bona fide but unsuccessful search for work. Roston, 404 So.2d at 175; see also Heller Brothers v. Avans, 414 So.2d 1191 (Fla. 1st DCA 1982). The deputy commissioner correctly concluded that Romero's job search, consisting of applying for work at five places during the seven months following the suspension of benefits, was inadequate to demonstrate a good faith work search. Walton v. ALCO Distributors, Inc., 434 So.2d 60 (Fla. 1st DCA 1983).
Accordingly, those portions of the order setting a date of MMI and denying Romero's request for psychiatric treatment are reversed and the deputy commissioner is instructed to authorize psychiatric care for Romero. The order is affirmed in all other respects.
NIMMONS and BARFIELD, JJ., concur.