537 So.2d 1123 (1989)
Aaron JONES, Appellant,
v.
CITRUS CENTRAL, INC., and Professional Administrators, Appellees.
No. BT-33.
District Court of Appeal of Florida, First District.
February 2, 1989.
Howard G. Butler, Meyers and Mooney, Orlando, for appellant.
Thomas H. McDonald, Cooper, Rissman, Weisberg, Barret & Hurt, Orlando, for appellees.
ZEHMER, Judge.
Aaron Jones appeals an order denying his claim for workers' compensation benefits on the ground that he did not sustain a compensable injury. Claimant contends that undisputed, unrebutted evidence causally related his injury to an industrial accident that occurred during the course of his employment, and seeks reversal because the employer and carrier called no witnesses and presented no evidence to contradict and thereby cast doubt on the veracity of his evidence. The deputy commissioner's ruling was premised on his rejection, for lack of credibility, of the claimant's testimony that he was injured on the job. The stated grounds for rejecting claimant's testimony for lack of credibility are that claimant did not report the accident the day it occurred, he did not report the accident or injury the next day when he called in sick, and parts of claimant's testimony were inconsistent with other parts of his testimony and the initial medical report. Careful review of the record fails to reveal any such inconsistencies and leads us to conclude that the deputy's rejection of claimant's testimony for lack of credibility was clearly arbitrary and unreasonable. Therefore, we reverse.
Claimant, an employee of eighteen years with this employer, testified on deposition *1124 and at the hearing to the following version of the facts. While loading heavy material on an assembly line at work he twisted his lower back. The incident occurred a few minutes before quitting time on July 1, 1986, but because it did not cause much immediate pain, he did not report it to anyone at that time. After he arrived home his back began hurting badly. The next morning his back was still hurting, but he believed it would improve with rest, so did not go to work; he did call in and advise office personnel that he was sick and hurting without mentioning the back injury.[1] The following morning, July 3, he reported his back injury to three of his supervisors and they sent him to the emergency room at Florida Hospital for an examination. Claimant was scheduled for a three-week vacation from July 3 to July 25 and he did not return to work immediately. A death occurred in his family and he drove to Atlanta to help his mother; however the drive increased the soreness in his back, so he spent most of the 7 or 8 days in Atlanta lying down. On July 25, 1986, claimant returned to Florida Hospital emergency room complaining of back pain. The examining physician recommended that he see a back specialist, but the particular specialist he recommended could not see claimant until September 27. Claimant called work to advise them that he could not return to work from his vacation because his back was still sore and he did not have a doctor's release to work. On July 29, 1986, the employer "fired" claimant. Claimant requested a meeting with the employer to determine the reason for the termination, and at that meeting the employer referred him to Dr. Scarlotos.
Claimant first saw Dr. Scarlotos on August 5, 1986. He found the claimant cooperative and noted the initial diagnosis was lumbro-sacral strain and degenerative disc disease at L5-S1, which was visible on x-ray. He ordered a CAT scan, which was performed in September 1986 and revealed a disc herniation at L5-S1. He also performed a confirming myelogram. Dr. Scarlotos opined there was a causal relationship between the herniated disc and the July 1, 1986 industrial accident described by claimant. He explained that the accident either caused the herniated disc or aggravated its symptomatic condition, and that the herniated disc was causing most of claimant's problems, although some of the degenerative changes were associated with pre-existing degenerative disc disease. He found that claimant had reached maximum medical improvement, without specifying a date, and assigned claimant a rating of 5 percent impairment of the body as a whole. Therefore, Dr. Scarlotos concluded, claimant must find lighter work to avoid re-injuring his back. He last saw claimant on November 14, 1986.
Claimant returned to work on November 18, 1986, and is performing the same job, although he tries to avoid lifting with the assistance of fellow employees.
The employer and servicing agent first controverted compensability on September 15, 1986. At the hearing they cross-examined the claimant's witnesses and stipulated to certain documents going into evidence, but did not otherwise present any testimony. The deputy commissioner entered a final order on March 13, 1987 denying *1125 the claim on grounds the claimant "did not sustain a compensable injury from any accident arising out of and in the course of his employment." (R. 135). The order continued:
Making this finding, I have carefully considered the claimant's testimony that he was injured on the job, but reject same as not credible. Additionally, his testimony is inconsistent with other parts of his testimony and the initial medical report.
The claimant testified that he told no one of his accident or injury the day it supposedly occurred. He also testified that the next day, he called the employer to report that he would not be coming in that day because he was "sick." He admittedly did not mention his back, nor did he state that he was injured on the job.
I have also relied upon the initial medical report which states "no known trauma."
I have considered the testimony of Dr. Scarlotos. However, the opinions of Dr. Scarlotos with regards to the relation between the claimant's condition and the history of an industrial injury are based upon the accuracy of that history. Since I have rejected the veracity of this history, Dr. Scarlotos's opinion on causality is irrelevant. Furthermore, I note that Dr. Scarlotos was unable to testify specifically that he believed, within a reasonable medical probability, that the alleged industrial accident was causally related to the claimant's condition.
(R. 135).
We note at the outset that claimant's testimony at the hearing was rather abbreviated because his deposition was in evidence and the deputy commissioner directed that claimant not duplicate matters covered in the deposition. The hearing transcript contains only two pages of cross-examination of claimant at the hearing and two pages of cross-examination at the deposition, with no attempt to impeach claimant on the basis of prior inconsistent statements. The majority of claimant's testimony was by deposition, and this court is in as good a position as the deputy commissioner to evaluate the credibility of a witness's deposition testimony. Romero v. Waterproofing Systems of Miami, 491 So.2d 600 (Fla. 1st DCA 1986); Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983).
The only issue on this appeal is whether the deputy commissioner's rejection of claimant's explanation of his injury at work on July 1 based on lack of credibility constitutes reversible error. We note that "questions regarding the credibility of witnesses are solely within the province of the [deputy commissioner] and his resolution of those questions will not be reversed unless clearly arbitrary and unreasonable." John Caves Land Development Co. v. Suggs, 352 So.2d 44, 45 (Fla. 1977). It is also appropriate to the resolution of this appeal to recall Justice Terrell's discussion of the claimant's burden of proof in a workers' compensation proceeding:
I think the facts as revealed by the findings of the deputy commissioner are ample to show that the deceased was engaged in his employer's business at the time he was killed. In such cases it is essential that claimant prove or show a state of facts from which it may be reasonably inferred that deceased was engaged in his master's business when the accident resulting in his injury took place. This court is committed to the doctrine that in making such proof the claimant is not bound by the preponderance of the evidence rule or the rule of proof beyond and to the exclusion of a reasonable doubt. Sanford v. A.P. Clark Motors, Fla. 1950, 45 So.2d 185. These rules grew out of the necessity for orderly procedure in reaching and litigating issues in civil and criminal cases.
Workmen's compensation is a complete departure from the civil and criminal code; the issues are different and require a different procedure to resolve them. As heretofore stated, in workmen's compensation, it is essential that claimant prove or show a state of facts from which it may be reasonably inferred that deceased was engaged in his master's business when the accident resulting *1126 in his injury took place. If the evidence to establish such a state of facts is competent and substantial and comports with reason or from which it may be reasonably inferred that deceased was engaged in his master's business when he was injured, it is sufficient.
Evidence to show a state of facts from which a conclusion may be reasonably inferred or that is substantial and comports with reason is markedly different from establishing by the preponderance of the evidence rule or the rule of proof to the exclusion of a reasonable doubt. The reason for this is grounded in the reason for workmen's compensation  a means devised to require industry to share with society the expense of injuries caused by it. This is why we are committed to the doctrine that when an injury is conclusively shown and a logical cause for it is demonstrated, he who seeks to defeat recovery has the burden of overcoming the established proof and showing that another cause is more logical and consonant with reason. Crawford v. Benrus Market, Fla. 1949, 40 So.2d 889.
Proof measured by preponderance of the evidence rule or the rule to the exclusion of a reasonable doubt would certainly contemplate the elimination of a degree of uncertainty not contemplated when measured by "reason," "reasonable inference" or that which "comports with reason" or "logic," such factors being the sole guide for measuring proof in many workmen's compensation cases. The human element that enters into these factors varies as the mind and emotions of men vary and they should not be measured by the preponderance of the evidence rule or the proof beyond the reasonable doubt rule. To so measure them will cut off many who are entitled to workmen's compensation.
Johnson v. Koffee Kettle Restaurant, 125 So.2d 297, 299 (Fla. 1960).
In reviewing the deputy commissioner's stated reasons for rejecting claimant's credibility, we have carefully reviewed the entire record and find nothing inconsistent between claimant's testimony and other evidence of record. Contrary to the deputy commissioner's finding that claimant did not report his injury on the job the second or third day he called in sick, we have only to look at the deputy commissioner's comments quoted at footnote 1, supra, to observe that the employer and servicing agent did not make any issue concerning lack of timely notice of the accident. The record simply does not support a finding that claimant did not mention his back injury on the job.
Next, the deputy commissioner relied upon the entry "no known trauma" in the initial medical report as impeaching claimant's credibility. We find this entry, when the entire report is considered, is not inconsistent with claimant's explanation of his injury at the time this report was made. The document is a hospital emergency room record upon which a hospital employee wrote, "pain, lumbar area  started 7/1  no known trauma." The person writing this note was not called as a witness and asked to explain what was meant by the entry or exactly what the claimant said at the time. Thus, whether this employee used the word "trauma" in the same sense as the deputy commissioner was never established. The word "trauma," being derived from the Greek word meaning wound, is defined as "a physical injury caused by a blow, or fall... . An injury, wound, shock or the resulting condition or neurosis." Black's Law Dictionary 1344 (5th ed. 1979). Given this definition and the general use of the word "trauma" to connote a visible wound or injury resulting from a blow or laceration attributable to an external force, it is pure speculation to infer from this entry that claimant never told the emergency room employee that he sustained a twisting injury to his back while lifting a heavy weight at work. Rather, other entries on that same document indicate just the opposite inference, for such entries reveal that, at the time the report was created, someone related information regarding an accidental injury to claimant. The document contains an entry for "ACCIDENT DATE" as "070186" or July 1, 1986. The "NURSES HISTORY" *1127 section contains the above quoted entry relied on by the deputy commissioner. The "PHYSICAL EXAMINATION" section contains notes by the emergency room physician (who was also not called as a witness), which read, as best we are able to decipher them, "back pain in low lumbar area but no [indecipherable] or deformity  pain with bending over, getting up etc." At the right hand margin of this section, the box for "major trauma" contains a check mark. The "DIAGNOSIS" section indicates "low back strain" and the "TREATMENT" section indicates "heat, rest, see Rx." The emergency room physician ordered x-rays that revealed: "The L5-S1 disc space is somewhat narrowed. There is no apparent fracture or other acute abnormality. Impression: arthritic changes in the L5-S1 with narrowing of the disc space." There is nothing inconsistent with these entries and the history subsequently given to Dr. Scarlotos, and the CT scan confirmed the existence of a herniated disc at L5-S1. Moreover, these entries support, rather than impeach, claimant's testimony, if credence is given the check mark in the "major trauma" box. Additionally, we note that the employer's attorney never once questioned claimant about his statement to the emergency room employee and never undertook to establish that claimant never complained about an accident when visiting the emergency room. We hold that this entry does not support the inference accorded it by the deputy commissioner.
The fact that claimant did not report the accident on July 1, the remaining reason for the deputy commissioner's rejection of claimant's credibility, is also legally insufficient to support that finding. That claimant did not report his injury until he called in on the next two consecutive days is neither unreasonable nor inconsistent with the expected behavior pattern of a long-term employee who testified that he sustained two previous injuries while working for this employer without losing any significant time from work. The employer never made any issue about lack of timely notice, and it did not call any one of claimant's three supervisors to refute claimant's testimony that he told them of the injury a day or two after the accident. The employer's failure to call and present testimony of persons within its control having knowledge of a fact at issue, i.e., whether claimant complained of an injury at work soon after the incident, justifies an inference adverse to that party. Tri-State Systems, Inc., v. Department of Transportation, 500 So.2d 212, 215 (Fla. 1st DCA 1986), rev. denied by 506 So.2d 1041 (Fla. 1987). See also, Southern Cross Steamship Co. v. Firipis, 285 F.2d 651, 659 (4th Cir.1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961); 29 Am.Jur.2d, Evidence § 180 (1967).
We hold, therefore, that the record does not support the reasons asserted by the deputy commissioner for rejecting claimant's credibility and that this ruling was "clearly arbitrary and unreasonable" and must be reversed.
The deputy commissioner also erred in rejecting the testimony of Dr. Scarlotos regarding the causal relationship between the claimant's injury and the industrial accident related to him by the claimant. Dr. Scarlotos's testimony confirmed that claimant's condition was consistent with the lifting, twisting injury described by claimant, and was amply supported by claimant's credible testimony.
The appealed order is reversed and the cause is remanded for further proceedings consistent herewith. The denial of claimant's motion for attorney's fees is also reversed, the employer and servicing agent having controverted the claim and claimant having prevailed thereon on this appeal. Section 440.34(3)(c), Fla. Stat. (1987); Manley v. Bennett's Truck Equipment, 506 So.2d 1145, 1147 (Fla. 1st DCA 1987), rev. denied by 518 So.2d 1273 (Fla. 1987).
REVERSED AND REMANDED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] When asked whether he reported the accident to his employers, claimant responded, "I reported it the second of July." (R. 15). At this point the deputy commissioner interrupted and said, "There's no question on notice. They said yes that he did notify them ... on the stip sheet." (R. 15-16).

The matter came up again on redirect examination of claimant in the following manner:
Q. Now, other than that telephone call that you made the day after the accident, did you report that accident to anyone else there at Citrus Central after that?
THE COMMISSIONER: Reporting is not an issue.
A. What now?
MR. BUTLER: Well, it was brought out on cross examination simply the fact that he just told them. .. . the only thing that he told them was that... .
THE COMMISSIONER: He was sick and hurting.
MR. BUTLER: ... . he was sick and hurting and. .. .
THE COMMISSIONER: But they've agreed that they have notice of the accident.
(R. 24).