613 So.2d 56 (1992)
ALAMO RENT-A-CAR, et al., Appellants,
v.
Linval PHILLIPS, Appellee.
No. 91-3216.
District Court of Appeal of Florida, First District.
December 31, 1992.
Rehearing Denied March 4, 1993.
*57 Michael J. Fichtel and Veronica Biddle, Kelley, Kronenburg, Kelley, Gilmartin & Fichtel, Fort Lauderdale, for appellants.
Paul S. Rosenberg, Abe Rosenberg, P.A., Hollywood, for appellee.
PER CURIAM.
Appellee, Linval Phillips, filed a claim for worker's compensation benefits contending that he contracted pneumonia causally related to his employment with appellant Alamo Rent-A-Car. After a hearing on the claim, the judge of compensation claims (JCC) issued an order finding claimant's pneumonia compensable under either an "occupational hazard" or "exposure" theory of recovery. Finding it necessary to address only one of the issues raised on appeal, we reverse and remand for a new hearing on this claim.
Claimant contended that his job duties required him to wash buses approximately eight hours per day between the hours of 11 p.m. and 7 a.m. Phillips claimed that through these cold, windy nights he would get soaking wet from head to toe without being provided any waterproof gear to wear, and that he would alternate between the cold, wet conditions of exterior washing and the warm conditions of cleaning the heated interiors of the buses.
In preparation for the hearing on the claim, the employer/carrier (e/c) took the deposition of its sole expert witness in this case, Dr. Brumer, challenging the causal relationship between claimant's pneumonia and his job duties. Claimant filed a motion to strike the deposition testimony of Dr. Brumer on the ground that Dr. Brumer charged $500.00 per hour (total fee of $625.00) in contravention of Section 440.13(2)(k), Florida Statutes (Supp. 1990), which, according to claimant, "strictly prohibits deposition fees to treating or examining physicians from exceeding $200.00." Claimant asserted that exaction and payment of such a fee made the witness's testimony "incredible and prejudicial."
Claimant's motion to strike was heard at the commencement of the hearing on the claim for benefits. Claimant argued that after the deposition Dr. Brumer remarked: "[Y]ou pay somebody enough, you can get them to say anything." The JCC subsequently demanded to know if counsel for the e/c heard such a remark. Counsel stated that the witness "may have said that in jest, and that's the way I took it... . There was a lot of joking going on." The JCC later commented: "If I get to approve his bill, I'll cut it to $250.00 because I don't believe any doctor is worth five hundred dollars an hour." In ruling on claimant's motion to strike the JCC stated:
I am going to take his testimony on the face of it and your motion to strike his testimony is denied at this point. I'll read it and I'll take into consideration the fee he's charging when I read the deposition testimony to see what he's got to say.
During the merits hearing the JCC made various comments reflecting his attitude toward Dr. Brumer's testimony:
I don't care how many times he's been to court. Anybody that's got the guts to charge $500.00 witness fees is a professional witness, whether he goes to court many times or not.
* * * * * *
I will respect [Dr. Brumer's] opinion regarding pneumonia, but I will not respect his opinion regarding the fact it can't be aggravated by cold or wet. I know better from personal experience.
During the hearing on the e/c's motion for rehearing, the JCC, showing his disdain for Dr. Brumer, stated:
I really don't give a shit what Dr. Brumer said. Do you understand that?
In his final order awarding benefits, the JCC stated:
As this court noted at trial, one does not need a medical expert or in this case a "hired gun" to know that the water and cold found in Mr. Phillips' working place *58 precipitated the advancement and causation of the claimant's pneumonia.
* * * * * *
Dr. Brumer's testimony is further suspect since he charged a fee for his deposition testimony far in excess of the statutory guidelines.
On appeal, the e/c argues that the JCC's comments reflect bias and prejudice against its expert witness, thereby rendering the proceedings fundamentally unfair.[1] We agree. We find that the collective statements of the JCC with respect to the credibility of the e/c's expert witness reflect a personal bias unwarranted in light of the size of the fee paid for such testimony, even though in excess of the statutory cap. Most notably, the JCC's comments reflect a negative bias as to the witness's credibility formed even before Dr. Brumer's testimony was read and evaluated by the JCC. Nor can we ignore the prospect that the JCC may have been unduly influenced by claimant's representation of non-record statements attributed to Dr. Brumer which reflect quite negatively upon the credibility of the witness.
We conclude that the totality of the JCC's comments with respect to Dr. Brumer's credibility reflect a bias against the witness unbecoming an impartial trier of fact. Such bias constituted a deprivation of the e/c's right to due process of law. Accordingly, we vacate the order of the JCC and remand the case for a new hearing on the merits.[2]
On remand, we note that the amount of the fee paid to an expert witness is but one factor which may be considered by the trier of fact in assessing the witness's credibility. However, we would expect that an impartial trier of fact would not assess a witness's credibility based solely upon that one factor, but would evaluate the witness's testimony (live or by deposition) with an open mind as to the relative merits of the content of such testimony.
Moreover, there is another reason why the JCC's findings must be rejected. The JCC appears to have impermissibly relied on his personal experience to conclude that claimant's pneumonia was aggravated by his working conditions. The question whether claimant's pneumonia was caused by or aggravated by his working conditions is essentially a medical one which is most persuasively answered on the basis of the medical evidence provided, rather than a matter falling within the sensory experience of a lay person. See Romero v. Waterproofing Systems of Miami, 491 So.2d 600, 602-603 (Fla. 1st DCA 1986) (citing Jackson v. Dade County School Board, 454 So.2d 765, 766 (Fla. 1st DCA 1984)). With respect to the causation of streptococcal pneumonia, even claimant's expert witness, Dr. Alexander, testified that the disease is caused by inhalation of the particular bacteria. Although Dr. Alexander testified that claimant's pneumonia could "get worse" if he returned to work while still suffering from the disease, it is not clear whether the JCC's findings reflect a preference for Dr. Alexander's opinion over that of Dr. Brumer (even assuming the JCC was giving fair consideration to Dr. Brumer's opinion), or whether the JCC was simply giving undue weight to his own unqualified lay opinion on the aggravation question. In such a case, we are reluctant to conclude that the JCC's findings are supported by competent, substantial evidence.
VACATED and REMANDED for a new hearing.
MINER and KAHN, JJ., concur.
ALLEN, J., dissents with opinion.
*59 ALLEN, Judge, dissenting.
I respectfully dissent. The remarks of the judge of compensation claims clearly evidence a lack of judicial decorum. Nevertheless, in the context of this proceeding, the remarks do not reflect such absolute judicial bias as to constitute fundamental error. Because the judge was the trier fact, we must defer to his findings if they are supported by competent substantial evidence. In my view, the findings are supported by competent substantial evidence.
Dr. Alexander, the treating physician, testified that pneumonia is accelerated or exacerbated by exposure to water and cold weather. And he testified that this is a matter of common knowledge among the general public. Consistent with this testimony, the judge expressed his view that medical testimony was not necessary to establish that exposure to water and cold weather can aggravate pneumonia. Notwithstanding his views in this regard, however, the judge explained his reasons for accepting the testimony of Dr. Alexander over that of Dr. Brumer. Paragraph eleven of the order reads as follows:
I choose to accept the testimony of the Claimant's treating physician, Dr. Alexander, over that of the Carrier's doctor, Dr. Marshall Brumer. Dr. Alexander's testimony is more credible since he was the treating doctor and had occasion to observe and treat the Claimant while he was in the hospital recuperating from pneumonia. Dr. Brumer's testimony is further suspect since he charged a fee for his deposition testimony far in excess of the statutory guidelines.
Even if resolution of the precise question disputed by Drs. Alexander and Brumer were exclusively within the expertise of medical experts, the quoted language from the judge's order fully justifies acceptance of Dr. Alexander's testimony and rejection of Dr. Brumer's testimony. Because Dr. Alexander's testimony provided an evidentiary foundation for the judge's finding of causation, we should affirm.
NOTES
[1] While this issue was not properly preserved for appellate review, we find that a fundamental error occurred, thereby obviating the need for a contemporaneous objection at the hearing.
[2] We note that this is not the first time that the intemperate and ill advised remarks of this judge of compensation claims have led this court to question his impartiality as a trier of fact. See TAK Communications v. Gerasimchik, 588 So.2d 305 (Fla. 1st DCA 1991).