WOLF, J.
Florida Power and Light and Wausau Insurance Company, the employer carrier (E/C), raise five issues on appeal. We find one issue to be dispositive; the judge of compensation claims (JCC) should have re-cused himself prior to entering the final order in this case. It is, therefore, unnecessary for us to reach the other issues.
A hearing was held on Teresa Garner’s claim for permanent and total disability *156 (PTD) benefits in December 1997. At the hearing, the E/C moved for the appointment of an expert medical advisor (EMA). The JCC, however, denied the motion as untimely. Following the hearing, the JCC awarded Garner PTD benefits, and corresponding supplemental benefits, from July 29, 1996, to the present and continuing, based on medical testimony presented by Dr. Gary Weiss and vocational testimony presented by Dr. John Russell.
On appeal from that order, the E/C argued that the JCC should have granted their motion for the appointment of an EMA to resolve the conflict in the opinions of the medical experts in the case. See Helmsman Management Servs. v. Garner, 725 So.2d 1188 (Fla. 1st DCA 1998). This court agreed and reversed the JCC’s award of benefits to claimant. See id. at 1189.
On remand, the E/C filed a motion with the JCC for appointment of an EMA based on the decision of this court. At the request of the JCC, the division selected Dr. Thomas Hoffman to be the EMA for this case. Dr. Hoffman conducted his evaluation of Garner in May 1999 and prepared a written report of that evaluation that day which he forwarded to the JCC.
Dr. Hoffman’s report concluded that Garner had experienced only a mild closed-head injury on the date of the accident, that she did not have a permanent seizure disorder even though she may have had a single postconcussive seizure, that she had no residual cognitive problems related to her head injury, that she rated no permanent impairment rating, and that she was capable of returning to work with certain restrictions. During his deposition, Dr. Hoffman adhered to the conclusions presented in his written report regarding Garner having no permanent conditions or impairments and being able to return to work with restrictions.
The final hearing on remand was held in July 1999. After hearing live testimony from Garner and arguments from counsel, but prior to reading any of the depositions entered into evidence, the JCC made the following comments:
Let me just make this one comment, which is unnecessary, but in the four years that I’ve been sitting over here reading depositions and medical reports from Doctor Hoffman, there’s never one time when he hasn’t been in conflict, to the best of my knowledge, with the claimant’s attorney.
I regard him as being a prostitute — not for the record, maybe that’s a little bit strong — and he’s a hired hand for the insurance industry.
I don’t know whether it comes from philosophical differences or whether he doesn’t believe anybody that needs help. He believes everybody’s a phony.
I can’t help but to draw that conclusion, because there’s never one time when I’ve heard him say things that were positive towards a claimant’s disability or impairment. That’s all.
The JCC then noted that he had “a lot of reading to do” and concluded the hearing.
One day after the conclusion of the hearing, the E/C filed a motion for disqualification of the JCC based on the comments the JCC had made about Dr. Hoffman at the conclusion of the hearing. In the motion, the E/C alleged that the JCC’s comments “showfed] a prejudice or bias in [the JCC’s] ability to remain neutral in rendering a decision, especially since the Judge of Compensation Claims sits as the finder of fact for this case.” The E/C further alleged in their motion that they had “a well founded fear that [they would] not receive a fair trial because of the statements made by the Judge of Compensation Claims in this case.” The motion was accompanied by both a certificate from the E/C’s counsel attesting that the motion had been made in good faith and not for the purpose of delay and an affidavit from the E/C’s representative attesting to the fact that he believed “[t]he statements made by the Judge regarding the expert medical advisor have demonstrated preju *157 dice in his ability to remain neutral in rendering a decision.”
We conclude that the motion for disqualification was legally sufficient and, therefore, should have been granted by the JCC. See Alamo Rent-A-Car v. Phillips, 613 So.2d 56 (Fla. 1st DCA 1992). In Phillips, the claimant in a workers’ compensation case had filed a claim for benefits contending that he had contracted pneumonia as a result of his employment with Alamo Rent-A-Car. See Phillips, 613 So.2d at 57. Prior to the final hearing, the claimant moved to strike the deposition testimony of the E/C’s expert medical witness on grounds that the doctor had charged in excess of the statutory rate for his testimonial services. See id. The JCC considered the motion to strike at the beginning of the final hearing. See id. Claimant’s attorney argued that he had heard the doctor state, at the conclusion of the deposition, that: “You pay somebody enough, you can get them to say anything.” See id. The JCC demanded to know whether the E/C’s attorney had heard such a remark. See id. The E/C’s attorney responded that it may have been said, but that he had taken the remark only in jest. See id. The JCC denied the motion to strike the doctor’s testimony, but proceeded to make several disparaging remarks about the doctor during the course of the hearing. See id. During the hearing in Phillips, the JCC had remarked that he would read the doctor’s testimony, but would consider the doctor’s fee in determining the credibility of that testimony. See id. The JCC had also called the doctor a “professional witness” during the hearing based on the fee he had charged. See id. The JCC had further stated during the hearing that he “really [didn’t] give a shit what [the doctor] said.” Id. In his final order awarding benefits to the claimant, the JCC in Phillips had stated that “one does not need a medical expert or in this case a ‘hired gun’ to know that the water and cold found in [claimant’s] working place precipitated the advancement and causation of the claimant’s pneumonia.” Id. at 57-58. On appeal, this court held that the JCC’s remarks about the E/C’s expert medical witness had reflected bias and prejudice against the expert and had rendered the proceedings fundamentally unfair. See id. at 58.
The remarks in the instant case are as egregious as the remarks in Phillips. In this case, the JCC called Dr. Hoffman “a “prostitute” and “a hired hand for the insurance industry” before he had even read Dr. Hoffman’s deposition testimony. The fact that the comments were made before the JCC had even read Dr. Hoffman’s deposition testimony undercuts claimant’s argument in this court that the comments were merely a communication by the JCC of his disbelief in the witness’ testimony formed during the course of the hearing.
We, therefore, reverse and remand for further proceedings with directions that this case be heard by another JCC.
ERVIN and WEBSTER, JJ., concur.