# Third District Court of Appeal

## State of Florida

Opinion filed March 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1887
Lower Tribunal No. 15-16216
_____


**I.T., the Mother,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.


An appeal from the Circuit Court for Miami-Dade County, Jason E. Dimitris, Judge.

Albert W. Guffanti, P.A., and Albert W. Guffanti, for appellant.

Karla Perkins, for appellee Department of Children and Families, Sara Elizabeth Goldfarb and Sarah Todd Weitz (Tallahassee), for appellee Guardian ad Litem.


Before FERNANDEZ, C.J., and LINDSEY, and MILLER, JJ.

MILLER, J.

Appellant, I.T., the mother, challenges a final judgment terminating her parental rights as to four of her five children, N.S., C.S., D.M.T., and I.A.V., at the request of appellee, the Department of Children and Families. On appeal, the mother raises several claims of error, only one of which merits further discussion. We write to address her contention that the use of videoconferencing equipment during the termination proceedings violated constitutional due process protections.[1]

## BACKGROUND

Given the nature of the issue on appeal, the facts require little elaboration. Confronted with a global pandemic, Chief Justice Charles Canady of the Florida Supreme Court issued a series of administrative orders directed at maintaining the operability and efficiency of the court system. As relevant to these proceedings, beginning in May of 2020, with the consent of the parties, circuit court judges were authorized to conduct termination of parental rights trials remotely. By the time I.T. proceeded to

---

[1] As it is well-settled the denial of due process constitutes fundamental error that may be raised for the first time on appeal, we reject the Department's contention this issue is not preserved. See Withers v. Blomberg, 41 So. 3d 398, 401 (Fla. 2d DCA 2010); Verizon Bus. Network Servs., Inc. ex rel. MCI Commc'ns, Inc. v. Dep't of Corr., 988 So. 2d 1148, 1151 (Fla. 1st DCA 2008); Sparks v. State, 740 So. 2d 33, 36 (Fla. 1st DCA 1999); State v. Johnson, 616 So. 2d 1, 3 (Fla. 1993); Alamo Rent–A–Car v. Phillips, 613 So. 2d 56, 58 n.1 (Fla. 1st DCA 1992); Ray v. State, 403 So. 2d 956, 960 (Fla. 1981).

trial, the operative administrative order provided, in relevant part: "Termination of parental rights and juvenile delinquency cases shall be conducted remotely if ordered by the chief judge or the presiding judge or, if not, shall be conducted in person." In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts, Fla. Admin Order No. AOS20-23, Amend. 9 (Fla. Feb. 17, 2021), (on file with Clerk, Fla. Sup. Ct.). In conformity with this prerogative, the trial court ordered the trial to occur remotely via the Zoom videoconferencing platform.[2] At the conclusion of the trial, the lower court terminated the mother's parental rights. The instant appeal ensued.

## STANDARD OF REVIEW

We review a claim of deprivation of procedural due process de novo. VMD Fin. Servs., Inc. v. CB Loan Purchase Assocs., LLC, 68 So. 3d 997, 999 (Fla. 4th DCA 2011).

## ANALYSIS

In this appeal, the mother's challenge is two-fold: (1) she contends that the use of remote technology in any termination proceeding violates due process; and (2) she argues that specific technological challenges in her trial deprived her of the process to which she was due.

---

[2] AOS20-23 is referenced in the final judgment of termination.

***Underpinnings of Due Process***

"No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  Amend. XIV, § 1, U.S. Const.; <u>see</u> Art. I, § 9, Fla. Const.  While this tenet is so deeply ingrained in our jurisprudence that citation to authority is a mere formality, "[f]or all its consequence, 'due process' has never been, and perhaps can never be, precisely defined."  <u>Lassiter v. Dep't of Soc. Servs. of Durham Cnty.</u>, 452 U.S. 18, 24 (1981).  However, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)).

In this regard, "due process 'is not a technical conception with a fixed content unrelated to time, place and circumstances.'"  <u>Lassiter</u>, 452 U.S. at 24 (quoting <u>Cafeteria & Rest. Workers Union, Local 473 v. McElroy</u>, 367 U.S. 886, 895 (1961)).  Instead, it is a "flexible" concept and "calls for such procedural protections as the particular situation demands."  <u>Keys Citizens for Responsible Gov't, Inc. v. Fla. Keys Aqueduct Auth.</u>, 795 So. 2d 940, 948 (Fla. 2001) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)).

In the seminal decision <u>Mathews v. Eldridge</u>, the Supreme Court developed three factors that must be considered in determining whether a due process violation occurred:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### *Private Interest*

In accord with <u>Mathews</u>, we are directed to first examine the private interest at stake in this dispute. "[A] natural parent's 'desire for and right to the companionship, care, custody, and management of his or her children' is an interest far more precious than any property right." <u>Santosky v. Kramer</u>, 455 U.S. 745, 758–59 (1982) (quoting <u>Lassiter</u>, 452 U.S. at 27). Indeed, as we have previously stated,

> "It is a basic tenet of our society and our law that individuals have the fundamental constitutionally protected rights to procreate and to be a parent to their children." "These constitutional rights are recognized by both the Florida Constitution and the United States Constitution." "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." "Even when blood relationships are strained, parents retain a vital

5

interest in preventing the irretrievable destruction of their family life."

I.T. v. Dep't of Child. & Fams., 277 So. 3d 678, 683 (Fla. 3d DCA 2019) (citations omitted). Here, the Department seeks not merely to infringe upon that relationship, but to terminate it. Success by the Department in this endeavor "work[s] a unique kind of deprivation." Lassiter 452 U.S. at 27. Given these stakes, the private interest weighs in favor of the mother.

### ***Risk of an Erroneous Deprivation***

As required under Mathews, we next examine the risk of an erroneous deprivation associated with conducting the proceedings remotely. The mother does not contend she was deprived of notice of the issues involved or an impartial arbiter, nor does she allege she was prohibited from responding to evidence, presenting favorable evidence, or consulting with her attorney. Instead, she argues that using remote technology in any termination proceedings "runs contra to the fundamental liberty interests at stake in dependency cases," and that, in her case, technological issues impaired the quality of the trial.[3] We address each argument in turn.

---

[3] Although the mother further contends that the use of remote technology undermined the effectiveness of her counsel, the allegations in furtherance of this position are wholly conclusory.

It is scarcely debatable that the physical presence of a parent is preferred in termination proceedings. However, there is a vast body of persuasive authority holding that "[t]here is no due process right mandating a parent's physical presence at a civil termination of parental rights trial when represented by counsel." N.J. Div. of Child Prot. & Permanency v. F.M., A-3893-17T3, 2019 WL 149667, at *5 (N.J. Super. Ct. App. Div. Jan. 7, 2019). Further, in various reported cases, Florida courts have authorized remote appearances in other similar high-stakes contexts, including at probation violation hearings, delinquency trials, and sentencing hearings. See Clarington v. State, 314 So. 3d 495, 500 (Fla. 3d DCA 2020); E.A.C. v. State, 324 So. 3d 499, 507 (Fla. 4th DCA 2021); Brown v. State, 47 Fla. L. Weekly D190, D193 (Fla. 4th DCA Jan. 12, 2022). Similarly, several courts from other jurisdictions have determined that, for constitutional purposes, a meaningful opportunity to be heard may be afforded despite the absence of the physical presence of a parent. See In re C.T., 501 P.3d 899, 909 (Kan. Ct. App. 2021) (denying mother's request for an in-person hearing where she had access to all exhibits, could consult with her attorney privately, and would appear by videoconference); In re I.L., 177 N.E.3d 864, 872 (Ind. Ct. App. 2021) (holding there was no due process violation where virtual termination procedures were "substantially similar" to in-person termination

7

procedures); In re P.S., Nos. 5-21-0027, 5-21-0028, 2021 WL 3141203, at *17 (Ill. App. Ct. July 26, 2021) (holding that conducting a termination of parental rights hearing over Zoom did not violate due process); In re Smith, Nos. 355077, 355677, 2021 WL 2769825, at *4 (Mich. Ct. App. July 1, 2021) (finding no due process violation where termination hearing was conducted over Zoom, father could appear virtually and was given the opportunity to present evidence and question witnesses); E.N. v. Tex. Dep't of Fam. & Protective Servs., No. 03-21-00014-CV, 2021 WL 2460625, at *5 (Tex. App. June 17, 2021) (holding that termination of parental rights jury trial conducted by videoconference did not violate father's due process rights); see also Alex H. v. State Dep't of Health & Soc. Servs., 389 P.3d 35, 54 (Alaska 2017) (finding no due process violation where court refused to order incarcerated father's transport to termination trial); In re J.P.B., 509 S.W.3d 84, 97 (Mo. 2017) (recognizing no constitutional right of incarcerated parents to physically attend termination hearings); St. Claire v. St. Claire, 675 N.W.2d 175, 177–78 (N.D. 2004) (concluding incarcerated parent had only a limited right to appear in person at hearing to terminate parental rights); In re Int. of L.V., 482 N.W.2d 250, 258 (Neb. 1992) ("[P]arental physical presence is unnecessary for a hearing to terminate parental rights, provided that the

parent has been afforded procedural due process for the hearing to terminate parental rights.").

Further, in this case, the mother did not request to appear in person, and the trial court ensured that the proceedings bore all of the hallmarks of a formal trial. In this regard, the mother was granted access to all exhibits, permitted to privately consult with counsel, and afforded the opportunity to present opening statement, closing argument, and legal argument, examine and cross-examine witnesses, voice objections, and offer exhibits.

Throughout the proceedings, the trial judge repeatedly instructed the participants to immediately alert him of any disruptions in the audio or visual feed. Although the mother correctly cites to portions of the record reflecting discussions regarding internet connectivity issues, video freezing, and low volume, in each cited instance, the court halted the proceedings until connectivity or sound was restored or asked the speaker to repeat the preceding statement or question. Given these preventative and remedial measures, we conclude the mother has failed to demonstrate any viable risk of an erroneous deprivation.

### ***The Government's Interest***

Lastly, we are directed by <u>Mathews</u> to examine the government's interest. Of initial note, "the proceeding arises in the midst of a global

pandemic which has spawned a public health emergency." Clarington, So. 3d at 502. This, however, is but one consideration. In all termination cases, the State has two additional interests: "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." A.M. v. Dep't of Child. & Fams., 223 So. 3d 312, 316 (Fla. 4th DCA 2017) (quoting Santosky, 455 U.S. at 766). The former consideration necessarily encompasses the child's need to achieve permanency and the correlating harm that results when such permanency is unduly delayed, while the latter implicates governmental hardship. See J.B. v. Fla. Dep't of Child. & Fams., 170 So. 3d 780 (Fla. 2015); B.Y. v. Dep't of Child. & Fams., 887 So. 2d 1253 (Fla. 2004). In view of the unique circumstances gripping our state, which have precipitated congested dockets, along with the need for implementation of prophylactic measures within court facilities, we conclude that the State's *parens patriae* and administrative interests both weigh in favor of conducting the termination trial remotely. See C.M. v. Dep't of Child. & Fam. Servs., 854 So. 2d 777, 779 (Fla. 4th DCA 2003) (citation omitted) ("At all stages of the proceedings, courts are compelled to expedite proceedings to prevent children from languishing in the foster care system. . . . Achieving permanent stability in the child's life is the paramount concern of the judicial process."); J.B. v. Fla.

Dep't of Child. & Fam. Servs., 768 So. 2d 1060, 1065–66 (Fla. 2000) ("[Termination] proceedings place a tremendous cost and hardship on the State. In response, the Legislature has attempted to resolve this monumental burden by enacting legislation which swiftly moves these cases toward resolution, while at the same time guarding the rights and liberties of the parties involved.").

### ***Net Weight of Factors***

Because termination proceedings seek not merely to infringe upon a fundamental liberty interest, but to end it, the private interest factors weigh heavily in favor of the mother. See Santosky, 455 U.S. at 759. Conversely, the State's interest in protecting the welfare of the children and ensuring expeditious and cost-effective proceedings weigh against the mother. Although the private interest is arguably more compelling, as it is constitutionally derived, we are not persuaded that the mother has demonstrated the use of technology in all termination cases or in this particular case presents a risk of erroneous deprivation. Concluding the trial court afforded adequate procedural safeguards to comport with due process, we affirm the final judgment in all respects.

Affirmed.

11

LINDSEY, J., specially concurring.

I agree this case should be affirmed. On this record, there are no specific circumstances that give rise to a violation of the Mother's due process rights. Most of the Mother's arguments on appeal broadly challenge the use of remote proceedings as a violation of due process. However, I would focus more narrowly on the specific circumstances below that the Mother contends compromised the integrity of the proceedings. Specifically, the alleged technical problems or "glitches." Based on the record before us, I agree that in this case, the integrity of the proceedings was not compromised. Though there were technical issues, the trial court properly mitigated any harm.

But I think it important to add that this Court's opinion is limited to the particular facts in this case, and it does not foreclose the possibility of due process violations in other remote proceedings. See E.A.C. v. State, 324 So. 3d 499, 509 (Fla. 4th DCA 2021) (Levine, C.J., specially concurring) ("[I]t is also important to remember that there is no pandemic exception to the Constitution. Although the pandemic persists, so does the Constitution." (citing Terkel v. Ctrs. for Disease Control & Prevention, 521 F. Supp. 3d 662, 676 (E.D. Tex. 2021), appeal dismissed, 15 F.4th 683 (5th Cir. 2021))).