411 So.2d 259 (1982)
GOLD COAST PAVING COMPANY, INC. and Maryland Casualty Insurance Company, Appellants,
v.
Baltazar FONSECA, Appellee.
No. YY-308.
District Court of Appeal of Florida, First District.
March 4, 1982.
Rehearing Denied April 6, 1982.
*260 Frank G. Cibula, Jr., West Palm Beach, for appellants.
Shelton Clyatt, Jr., West Palm Beach, for appellee.
BOOTH, Judge.
This cause is before us on appeal by the employer/carrier from a workers' compensation order awarding continuing temporary total disability benefits from the date of the accident, past and continuing medical treatment by claimant's physicians in Mexico, attorney fees, interest, penalties and costs. The employer/carrier raises numerous points on appeal. Because we find that there was no competent substantial evidence that the claimant's disability at the time of the hearing on September 25, 1980 was causally related to his May 21, 1978 industrial accident, we reverse.
Claimant, Baltazar Fonseca, is a native of Mexico who was employed as a laborer by appellant, Gold Coast Paving Company, Inc., in Palm Beach County, Florida. He had a history of back and groin pain dating from 1976. In August, 1977, Fonseca sustained an industrial accident while working for a prior employer. He was treated for back pain and underwent surgery to repair a hernia but returned to work without restriction in December, 1977.
Approximately five months later, on May 21, 1978, Fonseca sustained a second accident when he jumped from a roller machine in the course of his employment with appellant. Following a short hospitalization for contusions and muscle spasm of the lumbrosacral area of the left hip, Fonseca lived with his brother in Pahokee, Florida, for approximately two months. During this period, the employer/carrier supplied medical treatment by several authorized physicians and paid temporary total disability benefits until June 29, 1978, when the payments ceased for reasons not apparent in the record. After filing a "shotgun" workers' compensation claim on July 17, 1978, Fonseca left the United States in August, 1978, and flew back to his residence in Irapuato, Mexico, where he remained during the proceedings below.
Prior to Fonseca's departure from the United States, his physicians felt that he was able to return to work, and all x-rays were normal. Dr. Penner, the treating orthopedic surgeon, stated by deposition that his examination of Fonseca on July 25, 1978 was "completely normal" and that he suspected malingering, although he "tried ... to be fair to this patient." Dr. Orduna, a general surgeon who repaired Fonseca's 1977 hernia, examined him on June 14, 1978, after Fonseca complained of groin pain. Dr. Orduna found "no recurrence or breakdown in the hernia repair" and recommended that Fonseca return to work in two weeks. At the time Fonseca left the United States, there was no medical evidence of any disability or inability to work.
The Deputy Commissioner's finding that Fonseca had "serious and continuing medical problems" related to the May 21, 1978 accident was based entirely on deposition testimony by two physicians in Irapuato, Mexico, approximately one and a half years after the accident. This testimony was taken on October 19, 1979, without the presence of the employer/carrier's counsel. The deposition testimony revealed that Fonseca waited approximately six months after his return to Mexico (eight months after the accident) before seeking medical attention on February 9, 1979. Dr. Arboleya, a specialist in physical therapy, testified that at this time Fonseca's x-rays revealed a herniated disc caused by a wedge fracture and nerve root compression. Dr. Arboleya felt that Fonseca was totally disabled and might require surgery if he did not improve within *261 two months. He did not testify as to causation. Dr. Delfin, a Mexican neurosurgeon, also examined Fonseca in early 1979 and diagnosed radicular compression and a herniated disc. Dr. Delfin also felt that Fonseca was totally disabled.
The Deputy Commissioner based his finding that Fonseca's disability in early 1979 was causally related to the industrial accident on the following deposition testimony:
Q Dr. Delfin, do you have an opinion based upon reasonable medical probability as to whether or not the competent producing cause of the patient's current complaints was the accident experienced May 21, 1978?
A Medically, yes; it could have been.
Q What is the basis of your opinion?
A The absence of symptomology, previous that is, to the accident and the development of the clinical picture secondary to the same and coinciding to the injured zone.
Q Is that the report of pain in the lower back after the accident?
A Exactly.
Clearly, Dr. Delfin was unaware that Fonseca had a prior history of intermittent back pain, that x-rays and medical examinations within two months of the accident were normal, and that approximately six months had elapsed before Fonseca sought medical attention in Mexico.
While a Deputy Commissioner has discretion to accept the testimony of one physician over that of another, "[t]his discretion must ... be solidly rooted in a firm foundation of fact to support the opinion of the expert upon whom the Deputy choses to rely." Geiger Distributors, Inc. v. Snow, 186 So.2d 507, 509 (Fla. 1966). Where, as in this case, such a factual foundation is absent, medical testimony lacks the necessary probative value to support a finding of causation. Munroe Memorial Hospital v. Thompson, 388 So.2d 1338, 1339 (Fla. 1st DCA 1980); Arkin Construction Company v. Simpkins, 99 So.2d 557 (Fla. 1957).
We are aware that ordinarily a reviewing court will not undertake to reevaluate the weight or relative credibility to be accorded medical testimony. Kashin v. Food Fair, Inc., 97 So.2d 609 (Fla. 1957). As stated by the court in United States Casualty Co. v. Maryland Casualty Co., 55 So.2d 741, 745 (Fla. 1951):
Doctors vary in degree of ability, as do lawyers, scientists, executives, educators, clergymen, and other professional as well as every-day business men. The factfinding arbiter is usually in a better position than the reviewing body to judge the ability, experience, and reputation of the various so-called expert witnesses who appear personally before him and to determine the weight which should be given to their testimony. One doctor may have a long list of degrees behind his name, while another has but few. However, the latter might, by his demeanor on the witness stand and by his freedom and clarity of expression, disclose a familiarity with the subject under discussion which far exceeds that of the ostensibly better educated theorist. [emphasis supplied]
However, where, as here, the only evidence presented is in the form of written depositions of witnesses, the considerations favoring the deputy's prerogatives are less compelling. Morrison Merchandising Corporation v. Rambeau, 377 So.2d 234 (Fla. 1st DCA 1979).
We also note that Fonseca, over the employer/carrier's objections, was not required to present himself at the hearing or at a deposition in Florida. See Chittick v. Eastern Airlines, Inc., 403 So.2d 595 (Fla. 1st DCA 1981). The only testimony of the claimant was taken by court-appointed commissioner in Irapuato, Mexico, on October 19, 1979. Thus, the rule that a Deputy Commissioner has discretion to reject medical testimony and to make findings based on lay testimony and on his personal observation of the claimant is not applicable in this case. See, e.g., Crowell v. Messana Contractors, 180 So.2d 329, 330 (Fla. 1965).
Accordingly, the order below is REVERSED.
SHAW and WENTWORTH, JJ., concur.