558 So.2d 43 (1989)
George BRAY, Appellant,
v.
ELECTRONIC DOOR-LIFT, INC., Executive Risk and the Division of Workers' Compensation, Appellee.
No. 89-249.
District Court of Appeal of Florida, First District.
December 20, 1989.
Rehearing Denied April 4, 1990.
*44 Joseph L. Daye, Fort Lauderdale, for appellant.
Lori M. Ferman, of Conroy, Simberg & Lewis, P.A., Hollywood, for appellee.
JOANOS, Judge.
Claimant George Bray appeals workers' compensation orders denying the compensability of his claim and refusing to grant his motion for rehearing on the basis of newly discovered evidence. We affirm in part and reverse in part.
The record reflects that claimant fell at work on April 18, 1988, as he and a fellow employee attempted to place a finished garage door on a push cart. Claimant fell backwards, first striking his back on the cart, and then striking his head and back on the concrete floor. Upon ascertaining that claimant's back was bleeding, his supervisor obtained the company medical kit from the office, and applied ointment and a bandage to claimant's back. Claimant did not report the injury, because he did not consider it serious. He continued to perform the same job duties for the next five to six weeks. However, during that time his legs began to hurt, he experienced difficulty in walking, and he developed a sensation of numbness in his leg. Subsequently, claimant's arm became numb, he developed a burning sensation in his elbow, and the back of his neck became painful.
Claimant saw Dr. Myers on May 31 and June 7, 1988. He paid cash for his first visit to Dr. Myers's office. Claimant testified that at that time he did not tell Dr. Myers that he had incurred a work-related injury, because the doctor did not ask. During his second visit, Dr. Myers asked claimant whether he had fallen at any time and hit his head or had an accident involving his back or spine. Claimant advised the doctor that he had fallen at work some five or six weeks before. Also during the second visit, the question of workers' compensation arose, when the doctor's secretary inquired about the manner of payment.
The record further reflects that Dr. Myers, a general practitioner, first treated claimant in 1979 for vertigo related to a urinary tract infection. In 1980-1981, Dr. Myers treated claimant for polycythmia vera, a condition in which the system manufactures too much blood. In 1985, Dr. Myers saw claimant for complaints of left arm numbness. When a lateral cervical spine x-ray appeared normal, Dr. Myers prescribed a muscle relaxant and referred claimant to Dr. Steingo, a neurologist. Dr. Myers did not see claimant again until 1988, when he presented with the complaints of dizziness and problems with walking and falling which form the predicate for this appeal. Dr. Myers's deposition testimony indicates that the notes he *45 made of the history he took from claimant concerning claimant's current medical problems placed the fall at work as six months prior to his examination of claimant, rather than the five or six weeks indicated by claimant's testimony and the testimony of his co-employees. Dr. Myers recommended a neurological examination and a brain scan. Claimant was walking so abnormally that Dr. Myers thought his problem might be a brain tumor. According to Dr. Myers, claimant had not related any prior history of a fall, or back or neck injury in the years Dr. Myers had been treating him.
On June 13 and 20, 1988, claimant was seen by Dr. Steingo, a neurologist. Claimant told Dr. Steingo of falling backwards at work, striking his back, neck, and head against a cart and then the concrete floor. Claimant's main complaint to Dr. Steingo was that his left leg was weak, and that it gave way at times, and dragged at times. Dr. Steingo ordered an MRI scan, which revealed a predominantly left-sided herniated disc at C5/6 level. Dr. Steingo said there was nothing in the history claimant related prior to 1988 that involved this condition. According to Dr. Steingo, a fall such as the one claimant described can produce a herniated disc.
The testimony of claimant's co-employees corroborated the general circumstances of claimant's fall, and the fact that his back bled as a result of a cut suffered in the fall. The co-employees expressed some uncertainty concerning the date of the fall. One thought the accident happened sometime in early April 1988; another thought it occurred in January or February of 1988.
On January 25, 1989, the judge of compensation claims entered an order finding that claimant did not suffer a compensable accident, and that his medical condition was due to personal factors unrelated to the employment. The order further found that the testimony was inconsistent, in that "the specific actions of the claimant in seeking payment initially by the group insurance carrier and in failing to give a history to Dr. Myers are specifically inconsistent with his present claim."
On February 6, 1989, claimant filed a motion for rehearing, on the basis of newly found evidence, i.e., witness Herno Exalus, who had been unavailable at the time of the hearing. Exalus had worked with claimant and had witnessed claimant's fall at work. On February 9, 1989, claimant filed a motion to perpetuate the testimony of Herno Exalus, on the ground that Exalus, a resident alien of Jamaican descent, might leave the jurisdiction.
At the hearing on the newly discovered evidence question, telephone testimony was received from the private investigator retained by claimant's attorney to locate Exalus and obtain a statement from him prior to the December 19, 1988, merits hearing. The investigator ascertained Exalus's correct address, but found no one at home when he went there on December 2, 1988. The telephone was temporarily out of order, so the investigator was unable to establish telephone contact with Exalus at that time. The investigator finally reached Exalus by telephone, and made an appointment to meet him at his home at 7:00 p.m. on December 7, 1988. Exalus was not at home when the investigator arrived for his appointment. The investigator returned December 8, 1988, and December 10, 1988; Exalus was not at home on either date, and did not return any telephone calls or messages the investigator left for him. On December 12 or 13, 1988, at the direction of claimant's counsel, the investigator terminated his efforts to contact Exalus. The investigator said that he did not pursue his one telephone contact with Exalus, because in those circumstances he could not definitely identify the speaker as Exalus.
On April 6, 1989, the judge entered an order finding that due to a lack of due diligence in obtaining the testimony of Herno Exalus prior to the merits hearing, his potential testimony could not be classified as newly discovered evidence. Therefore, the motion for rehearing was denied.
The first issue raises the question whether claimant suffered a compensable accident. Resolution of this issue implicates various evidentiary principles. One of these principles is that it is the claimant's *46 burden in a workers' compensation proceeding to prove or show a state of facts from which it may be inferred that the claimant was engaged in the employer's business at the time of the accident resulting in injury. Johnson v. Koffee Kettle Restaurant, 125 So.2d 297, 299 (Fla. 1960); Jones v. Citrus Central, Inc., 537 So.2d 1123, 1125 (Fla. 1st DCA 1989). However, a claimant is not bound by the preponderance of the evidence rule or the rule of proof beyond a reasonable doubt. Id.
Another rule is that questions concerning the credibility of witnesses are solely the province of the judge of compensation claims, and the judge's resolution of such questions will not be reversed unless they are clearly arbitrary and unreasonable. John Caves Land Development Co. v. Suggs, 352 So.2d 44, 45 (Fla. 1977). See also Calleyro v. Mount Sinai Hospital, 504 So.2d 1336, 1338 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987). Despite the fact finder's prerogative with regard to credibility determinations, the judge does not have the right to reject the unrefuted medical testimony of claimant's expert witness, without a reasonable explanation. Calleyro, 504 So.2d at 1337; Loughan v. Slutz Seiberling Tire, 483 So.2d 1389 (Fla. 1st DCA 1986). Consequently, "where the testimony and evidence at a hearing are uncontradicted, a finding contrary to the weight of such testimony and evidence is not supported by competent substantial evidence." Id., at 1391.
A third applicable rule involves the logical cause doctrine. Under the logical cause doctrine, "[w]here an injury is shown, and the evidence presents a sufficiently logical explanation of a causal relationship between the accident and the subsequent injury, the burden shifts to the employer/carrier to show a more logical cause." Wilhelm v. Westminster Presbyterian Church, 235 So.2d 726 (Fla. 1970); City of Fort Lauderdale v. Lindie, 496 So.2d 168, 169 (Fla. 1st DCA 1986) review denied, 506 So.2d 1042 (Fla. 1987); Poorman v. Muncy & Bartle Painting, 433 So.2d 1371 (Fla. 1st DCA 1983); Erb Building Systems v. Crowe, 416 So.2d 849 (Fla. 1st DCA 1982). For the logical cause doctrine to be applicable, "the claimant must prove a causal connection between his employment and the injury by competent, substantial evidence." Deahl v. Uni-Pak Corp., 550 So.2d 122 (Fla. 1st DCA 1989). In other words, if there is conflicting evidence concerning the cause of injury, the claimant must prove a causal connection between the employment and the injury, which connection may not be shown by application of the statutory presumption. Id., see also City of Fort Lauderdale v. Lindie, 496 So.2d 170.
The fact scenario of the instant case is similar to the circumstances in Slater v. United Parcel Service, 507 So.2d 1146 (Fla. 1st DCA), review dismissed, 518 So.2d 1278 (Fla. 1987). In Slater, the judge denied compensability on grounds that Slater failed to provide timely notification of his injury, and failed to prove by competent substantial evidence that he had sustained an injury arising out of and in the course of his employment. Slater worked for United Parcel Service during its peak delivery season. On December 24th, his last day of work, he experienced an aching pain in his left calf. In early January, an osteopath diagnosed his condition as stiff muscles due to overworking his leg, and prescribed a pain reliever and bed rest. When Slater returned a third time, the doctor felt he might have a disc problem. Therefore, in addition to prescribing bed rest, hot packs to the back, and a muscle relaxant, the doctor recommended that Slater have a CAT scan. Slater saw a second osteopath in February, who prescribed bed rest and medication, and also advised a CAT scan. Later, when his condition had not improved, Slater had the CAT scan. It revealed that he had suffered a herniated disc. When Slater learned of his condition, he immediately reported to his former supervisor that he sustained an industrial injury on December 24, 1984.
Because "[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable *47 compensable character of his injury or disease," 3 Larson Workmen's Compensation Law, § 78.41(a), in Slater, this court concluded that the finding of untimely notice was without record support. The court further found that Slater had made a conscientious effort to alleviate his pain through the treatment prescribed, and after experiencing no improvement, had the CAT scan performed. It was determined that Slater acted reasonably under the circumstances, and that he offered a satisfactory reason for not notifying the employer/carrier of the injury within the statutory time period.
In this case, the occurrence of an accident at work is undisputed. The testimony of claimant's co-employees, including that of foreman Bill Weathers, confirms that claimant fell at work, resulting in a two-inch cut on his back which was serious enough to require "patching up." Although none of the witnesses was certain of the date of claimant's accident, their respective accounts of the incident and its aftermath were consistent.
The judge's order reflects skepticism concerning claimant's credibility, predicated for the most part on the fact that claimant did not tell Dr. Myers on his first visit that he had suffered a work-related injury. The symptoms claimant was experiencing were not such to indicate to a lay person that they could be related to a fall or blow to the head or back. Therefore, claimant's failure to tell Dr. Myers of the fall at work until Dr. Myers specifically inquired whether he had suffered a recent fall, appears reasonable. By the same token, claimant's initial effort to file for group health coverage after his first appointment with Dr. Myers was reasonable, since at that time he had no reason to believe that his medical condition was related to his fall at work. As soon as he appreciated the significance of the fall in connection with his medical condition, he filed a claim for workers' compensation benefits.
Moreover, the record offers little or no support for the judge's finding that claimant's herniated disc "is related to personal factors unrelated to his employment." The uncontroverted medical testimony established that claimant was treated in 1979 for a urinary tract infection which caused vertigo, he was treated in 1980-1981 for a blood disorder, and he was examined in 1985 for left arm numbness. Tests performed in 1985 were negative for herniated disc. In addition, undisputed medical testimony established that claimant had not seen a chiropractor for six or seven years prior to the fall at work. In short, the uncontroverted medical testimony, together with claimant's unrefuted testimony and that of three co-workers, demonstrates a causal connection between claimant's employment and his injury. Although claimant was treated for possible neck strain in 1985, there were no documented problems with his neck between 1985 and 1988, when the herniated disc was diagnosed. The medical testimony was unequivocal and uncontradicted that claimant's herniated disc is consistent with the fall at work, that a herniated disc is an abnormal occurrence, and that claimant did not have a herniated disc prior to 1988. In the circumstances, we conclude that claimant established a logical cause for his injury, and that employer/carrier have not shown a more logical cause by competent substantial evidence.
The second issue concerns the propriety of the judge's rejection of claimant's motion for rehearing based on newly discovered evidence. Rehearing or new trial is warranted where (1) it appears that the evidence is such that will probably change the result if a new trial is granted, (2) the evidence has been discovered since the trial, (3) the evidence could not have been discovered before the trial by the exercise of due diligence, (4) the evidence is material to the issue, and (5) the evidence is mot merely cumulative or impeaching. Dade National Bank of Miami v. Kay, 131 So.2d 24, 26 (Fla. 3d DCA), cert. denied, 135 So.2d 746 (Fla. 1961).
It is the movant's burden to establish the exercise of due diligence. King v. Harrington, 411 So.2d 912, 915 (Fla. 2d DCA 1982), review denied, 418 So.2d 1279 (Fla. 1982). While the requirement of due *48 diligence is not a legal absolute, Ragen v. Paramount Hudson, Inc., 434 So.2d 907 (Fla. 3d DCA 1983), review denied, 444 So.2d 417 (Fla. 1984); Jackson v. State, 416 So.2d 10 (Fla. 3d DCA 1982), the general rule is that motions for new trial are looked upon with disfavor as tending to encourage looseness in practice. Jerrico, Inc. v. Washington National Insurance Co., 400 So.2d 1316, 1319 (Fla. 5th DCA 1981), review denied, 411 So.2d 382 (Fla. 1981).
The motion for rehearing in the instant case was predicated upon the testimony of Herno Exalus, who had been working with claimant when the accident occurred. We believe that the testimony was such that the determination by the judge that the newly discovered evidence could have been discovered with the exercise of due diligence was within the judge's discretion. Therefore, we will not disturb that determination.
Accordingly, the judge's order finding that claimant did not suffer a compensable accident is reversed, and the cause is remanded with directions to reconsider the compensability issue, with particular reference to the unrefuted nature of the medical testimony. The second order appealed, denying the motion for rehearing on the basis of newly discovered evidence, is affirmed.
WENTWORTH and THOMPSON, JJ., concur.