588 So.2d 646 (1991)
Eusebio RODRIGUEZ, Appellant,
v.
HOWARD INDUSTRIES and Liberty Mutual Insurance Company, Appellee.
No. 90-3556.
District Court of Appeal of Florida, First District.
October 25, 1991.
Rehearing Denied December 4, 1991.
*647 Edward Schroll, Miami, for appellant.
Sean J. Gallagher, of Miller, Kagan & Chait, P.A., Deerfield Beach, for appellee.
ERVIN, Judge.
Appellant, Eusebio Rodriguez, the claimant below, appeals from a final workers' compensation order denying him attendant care benefits and determining that he is not permanently and totally disabled (PTD). Claimant specifically argues that the judge of compensation claims (JCC) erroneously rejected unrefuted lay and medical evidence establishing reasonable necessity for home attendant care and erroneously rejected unrefuted medical evidence establishing that claimant is PTD. We agree with appellant as to both points and therefore reverse and remand for further proceedings.
*648 Claimant, a 65-year-old Cuban immigrant, began working for the employer in approximately 1979 as an assembler of windows and doors. He suffered a compensable injury to his right shoulder in an industrial accident that occurred on August 8, 1988, while he was lifting a window. Thereafter he filed a claim for benefits, requesting, among other things, PTD and attendant care benefits.
Claimant testified at the hearing that following his industrial injury, he came under the care of Dr. Jose Jaen, an orthopedic surgeon. Dr. Jaen performed a shoulder manipulation on August 31, 1988, and surgery to repair a torn rotator cuff in claimant's shoulder on May 4, 1989. Claimant stated that Dr. Jaen released him on November 20, 1989, with a 35 percent permanent impairment (PI) of the upper extremity. It was claimant's testimony, however, that he was unable to manipulate his right shoulder or arm and that he had lost "pressure" and strength in his right hand. He achieved no results from daily physical therapy, and cannot move his arm forward or backward and can only raise it a slight degree. Claimant complained that his condition had worsened since November 1989, in that he has more limitation, his hand shakes more, and he experiences greater pain. Although he is not in continual pain, he has pain when he moves his arm. He stopped physical therapy in July 1989 because it was too "violent." He said he began experiencing more chest pains after his shoulder injury and that he now has to take nitroglycerin.
As to the issue regarding attendant care, claimant testified that his wife has taken time off from work to help him. Because he is right-handed, his wife cuts his food and he must eat with his left hand. Additionally, his wife helps him dress, combs his hair, shaves him, and helps him bathe. Claimant's wife, Siomara Rodriguez, verified claimant's testimony. She also stated that she must be available to put hot and cold bags on him when he awakes at night because of the pain. She has performed the above attendant care services for her husband since his injury, helping claimant at the rate of six hours per day.
Dr. Jaen testified by telephone at the hearing. He related that he had conducted shoulder manipulation on claimant under an anesthetic on August 31, 1988, and surgery on May 4, 1989 to repair a torn rotator cuff. He noted there had been nerve impingement and inflammation. Dr. Jaen opined that claimant reached maximum medical improvement (MMI) on November 20, 1989, and discharged him with a 35 percent PI of the upper right extremity. He restricted claimant from lifting over two pounds and from any overhead working. Dr. Jaen testified that he was aware of claimant's cardiac condition, but that he did not consider that impairment in reaching his PI rating, which was strictly based on the significant limitation in claimant's range of motion.
In regard to home attendant care, Dr. Jaen said that as of his last determination in November 1989, claimant's condition was such that he needed a home care attendant, and if claimant's condition had not improved since November 1989, he would still be of the same opinion. Although stating claimant did not need attendant care to improve his condition or that it was medically necessary to do so, Dr. Jaen testified that the need was based on claimant's inability to do daily living activities, such as dressing and bathing, as a result of his injury.
Dr. Augusto Enriquez, claimant's family physician, also testified over the telephone at the hearing. He said that claimant came under his care in 1983 following quadruple coronary bypass surgery performed in July 1983 by a cardiologist. Dr. Enriquez opined that claimant has a PI of approximately 60 to 80 percent because of the bypass surgery. He was aware of claimant's shoulder injury, but stated he never treated it, having assumed that the orthopedist was. He did testify that he had performed a physical and range-of-motion test on claimant and opined that claimant had a 15 to 20 percent PI in regard to the shoulder injury. He admitted that he had never talked to the orthopedist, but stated that he did not need to be an orthopedist to determine that claimant had a severe problem *649 in his right shoulder. It was Dr. Enriquez's opinion that the combination of claimant's shoulder injury and his preexisting heart condition resulted in total unemployability. Further, the doctor stated that the shoulder injury, trauma, operation, and the frustrations and anxiety involved in the injury acted to aggravate his heart condition. Claimant's angina had been increasing since the time of the injury, and the doctor was currently in the process of referring claimant to a cardiologist, because he felt that claimant needed a cardio-catheterization.
Also admitted at the hearing were the reports of Dr. Garcia-Granda, a psychiatrist who treated claimant. He opined that claimant suffered from an adjustment reaction because of his inability to cope since the accident, that is, he feels useless and dependent on his wife. By letter dated August 1, 1990, Dr. Garcia-Granda opined that claimant had reached MMI from a psychiatric point of view with a 20 percent psychiatric PI.
The JCC entered an order determining that claimant was not PTD and denying benefits therefor. He also denied attendant care. In so ruling, the JCC rejected Dr. Enriquez's opinions regarding claimant's shoulder condition and the merger of the cardiac and shoulder conditions. He relied on Dr. Jaen's opinion that attendant care was not medically necessary.
In regard to the issue of the JCC's rejection of Dr. Enriquez's testimony concerning the PTD claim, as a general rule questions concerning the credibility of witnesses are solely within the province of the JCC. Bray v. Electronic Door-Lift, Inc., 558 So.2d 43, 46 (Fla. 1st DCA 1989). Nonetheless, although the JCC has the discretion to accept the opinion of one doctor over that of another, he may not reject unrefuted medical testimony without providing a reasonable explanation for doing so. Severini v. Pan Am. Beauty School, Inc., 557 So.2d 896, 897 (Fla. 1st DCA 1990); Calleyro v. Mt. Sinai Hosp., 504 So.2d 1336, 1337 (Fla. 1st DCA), review denied, 513 So.2d 1062 (Fla. 1987).
Dr. Enriquez's uncontradicted testimony was that claimant's shoulder and cardiac conditions combined so as to make claimant totally unemployable. The JCC rejected that opinion on the basis that Dr. Enriquez was a general practitioner who had never treated claimant for his shoulder condition, and because he did not possess any medical reports or other information from Dr. Jaen concerning the shoulder condition. Admittedly, an orthopedist's opinion may carry more weight than a family practitioner's in regard to orthopedic injuries. However, in regard to PTD, the two doctors are not in conflict, because only Dr. Enriquez rendered an opinion on PTD. Moreover, it cannot be said that Dr. Enriquez was not competent to render an opinion due to his capacity as a general practitioner. See Fuster v. Eastern Airlines, Inc., 545 So.2d 268 (Fla. 1st DCA 1988) (reversing JCC's rejection of family physician's testimony regarding PI because he was not an expert in orthopedics, was unfamiliar with the AMA Guides, and saw claimant eleven months after the accident).
As for Dr. Enriquez not having treated claimant for his shoulder injury, nor having reviewed Dr. Jaen's record, these reasons are likewise not supported in the record. It is true that Dr. Jaen treated claimant for the shoulder injury, but Dr. Enriquez was aware of this injury and did in fact examine it during a physical examination and perform a range-of-motion test. Because Dr. Enriquez conducted his own examination of claimant, albeit not as detailed as Dr. Jaen's, he was not required to base his opinion on Dr. Jaen's medical reports or notes. Under the circumstances, there was no basis for the JCC to completely reject Dr. Enriquez's opinion regarding claimant's shoulder injury.[1]
The JCC also rejected, because of the physician's lack of familiarity and expertise regarding claimant's orthopedic problems, Dr. Enriquez's opinion pertaining to the merger of claimant's cardiac and *650 shoulder conditions, rendering claimant totally unemployable. As previously stated, Dr. Enriquez was familiar with claimant's shoulder injury, and did examine and perform testing from which he determined his PI rating. Moreover, although the E/C argues that Dr. Enriquez was not qualified as an expert in cardiology, he nevertheless was claimant's treating physician who monitored claimant's cardiac condition, referring him to a cardiologist only when claimant needed more specialized treatment. In fact, Dr. Enriquez prescribed heart medication to claimant. Thus, it cannot be said that he was not qualified to render an opinion in this regard. Consequently, the JCC's reasons for rejecting Dr. Enriquez's opinions on the issue of PTD are not supported by CSE. As Dr. Enriquez's testimony on the issue of PTD is uncontradicted, the JCC's finding that claimant is not PTD is not supported by CSE. Bray, 558 So.2d at 46 (when testimony and evidence are uncontradicted, a finding to the contrary is not supported by CSE).
Because there is medical evidence to support a finding of PTD, it is unnecessary to consider whether claimant's work search established that he was PTD. Compare Romero v. Waterproofing Sys. of Miami, 491 So.2d 600, 603 (Fla. 1st DCA 1986) ("in the absence of medical evidence demonstrating an inability to work... [the claimant must show he or she] engaged in a bona fide but unsuccessful search for work") (emphasis added).
Turning to the attendant care issue, Section 440.13(2), Florida Statutes (Supp. 1988), requires the E/C to provide remedial care and treatment, including attendant care, as required by the nature of the injury and process of the recovery. When a family member renders attendant care, it is presumed gratuitous; however, when the services go beyond ordinary household duties such as shopping and cooking, benefits for attendant care may be awarded. Extraordinary services include bathing, dressing, administering medicine, and assisting in sanitary functions. Perez v. Pennsuco Cement & Aggregates, 474 So.2d 293, 295-96 (Fla. 1st DCA 1985), review denied, 482 So.2d 349 (Fla. 1986).
In the instant case, the JCC denied attendant care because Dr. Jaen, the only physician who testified on that issue, stated on cross-examination that such services would be "helpful" to claimant but that they were not "medically necessary." In so ruling, the JCC has apparently overlooked the express language of section 440.13(2)(a), which requires the E/C to provide the employee with remedial treatment, care, and attendance "for such period as the nature of the injury or the process of recovery may require," and section 440.13(2)(d), which requires the E/C to provide appropriate professional and nonprofessional attendant care "when the nature of the injury so requires." (Emphasis added.) This includes palliative attentions of another which mitigate the conditions or effects of the claimant's injury. Lopez v. Pennsuco Cement & Aggregates, Inc., 401 So.2d 875, 876 (Fla. 1st DCA 1981).
Thus, the statute embraces services required by the nature of the injury, as well as those that improve a claimant's condition. DeLong v. 3015 West Corp., 558 So.2d 108, 109 (Fla. 1st DCA 1990) (Wentworth, J., concurring). Here, although Dr. Jaen did not say attendant care was medically necessary to improve claimant's condition, he did say that such care was required based upon claimant's inability to do daily living activities, such as dressing or bathing, which resulted from his injury. This statement constitutes CSE to support a finding that attendant care is medically necessary due to the nature of claimant's injury. Such a conclusion is also supported by the testimony of both claimant and his wife, who clearly indicated that claimant's wife was performing extraordinary services. As such, it was error for the JCC to deny attendant care.[2]
*651 REVERSED and REMANDED with directions to award claimant attendant care and PTD benefits.
SMITH and ALLEN, JJ., concur.
NOTES
[1] Both doctors are, in fact, in agreement that claimant sustained a PI to his shoulder  Dr. Jaen opined 35 percent and Dr. Enriquez opined 15 to 20 percent.
[2] In regard to the E/C's arguments concerning application of the 1989 and 1990 amendments to section 440.13, particularly the amendment requiring a physician to prescribe attendant care, this issue was not raised below and is therefore waived. Even if we were to consider the merits of this point, Dr. Jaen's testimony is sufficient to allow an award.