625 So.2d 868 (1993)
James ULLMAN, Appellant,
v.
CITY OF TAMPA PARKS Department and Alexsis, Appellees.
No. 91-3048.
District Court of Appeal of Florida, First District.
September 15, 1993.
*869 Enrique Escarraz, III and Donald C. Anderson, St. Petersburg, for appellant.
Stephen M. Barbas, Tampa, for appellees.
EN BANC
KAHN, Judge.
In this workers' compensation case James Ullman appeals a decision of the judge of compensation claims (JCC) in favor of the appellee City of Tampa (E/C) on the question of whether Ullman is entitled to disability and medical benefits as the result of an industrial accident. Finding that the JCC properly and thoroughly performed his obligation as the finder of fact, we affirm. We have considered this case en banc in order to more clearly define the role of the JCC as the arbiter of disputed factual matters in workers' compensation cases.
As of June 6, 1990, Mr. Ullman had been employed by the E/C for approximately eight years. On or about that date, Ullman's supervisor instructed him to perform duties involving scraping off a nonskid surface from bathroom floors at a City Parks Department facility. Mr. Ullman engaged in this activity for about two and a half days. On June 13 or June 15, 1990, Ullman undertook a job which, according to his testimony, involved digging up or realigning meter boxes at a Tampa city park. On June 21, 1990, Ullman for the first time advised his supervisor that he had injured his back during the meter box activity. The supervisor, Mr. Slaza, inspected the meter box area two or three days later and determined that no physical evidence consistent with digging or realignment was present. At some point between June 18, 1990 and June 20, 1990, the E/C served Ullman with a notice of disciplinary action advising Ullman that a hearing would be held on June 21, 1990, concerning Ullman's employment. Mr. Ullman worked without interruption for the E/C, as well as for his part-time weekend employer from June 6, 1990 until June 20, 1990.
On June 21, 1990, upon his report of back problems to Mr. Slaza, Mr. Ullman sought treatment from Dr. Folkman, a family practitioner in Tampa. Mr. Ullman reported to the doctor the history of two-and-a-half days of floor scraping followed by digging up meter boxes approximately a week later. He related back complaints dating from these physical activities. Dr. Folkman diagnosed lumbar strain with "some spasm." She ordered lumbar x-rays which she read as "negative." Asked in her deposition whether Mr. Ullman's low back condition in June of 1990 "was related to the history that he gave you that you've talked about," Dr. Folkman replied, "I think it's pretty clear cut that he got *870 an injury at work and subsequently suffered some consequences thereof." A few weeks later Dr. Folkman decided that Mr. Ullman should be seen by an orthopedic specialist, and she referred him to Dr. Williamson. It turned out, however, that Ullman never made an appointment with Dr. Williamson.
The E/C desired an independent medical examination and ultimately referred Ullman to the same Dr. Williamson for an examination on November 29, 1990. Mr. Ullman reported to Dr. Williamson that he first became aware of back pain around June 15, 1990. Dr. Williamson noted complaints of pain with no objective findings. Interestingly, Dr. Williamson read the June 1990 lumbar x-rays from Dr. Folkman and from these films diagnosed spondylolisthesis of the low back, a condition described by Dr. Williamson as congenital. Concerning the question of a work-related accident, Dr. Williamson testified:
When these symptoms occur, I have to rely on the history that's given to me.
.....
The only way I can relate the patient's symptoms to a work-related injury is from the history that I have attained from the patient. I cannot examine this man and state from his present physical findings that his physical condition is work related.
The JCC entered an order finding that Mr. Ullman did not sustain an injury arising out of and in the course of his employment. Noting that the only evidence supporting Mr. Ullman's version of the origin of his back pain was in the form of Ullman's testimony and the history given to Drs. Folkman and Williamson, the JCC made the following findings concerning Ullman's credibility:
I find that [sic] the Claimant's testimony to be inconsistent, lacks credibility and was self serving in nature. The reason for this finding is that on or about June 20, 1990, the Claimant was served with a Notice of Disciplinary Action advising him that a hearing was to be scheduled on June 21, 1990 the same day which he reported this alleged accident. The Claimant testified that he received the Notice several days earlier, I reject that. Not until after he was served with this Notice of Disciplinary Action, which ultimately resulted in his termination[1] for reasons unrelated to any physical problems, did he request to see a physician or specifically related the cause for his back problems. It is noteworthy that Mr. Ullman was the safety representative for his crew or group and should have known the proper procedure for immediately reporting an on the job accident. In addition, the Claimant worked continuously, including his weekend part-time job from June 6, 1990 until June 20, 1990 the day that he was served with Notice of Disciplinary Action.
Even though there was testimony the Claimant did complain of back pain there is no testimony of any of the specifics of an accident until June 21, 1990, the date of his Disciplinary Hearing. Claimant testified that the reason he reported it on that date was that he could no longer take the pain. I reject the Claimant's assertion that this was totally coincidental.
The JCC then found that Mr. Ullman did not sustain an injury as a result of an accident arising out of and in the course of his employment. Because of his conclusion that no industrial accident occurred, the JCC denied benefits, without commenting on the medical opinions rendered by Drs. Folkman and Williamson.
In urging reversal, Ullman argues that the medical evidence is "unrefuted" that he received a traumatic injury to his low back in June of 1990 and that such injury was the result of an industrial accident while working for the City of Tampa. Ullman contends that a JCC may not reject unrefuted medical testimony as to causation without a reasonable explanation for doing so, and cites Philpot v. City of Miami, 541 So.2d 680 (Fla. 1st DCA 1989); Bray v. Electronic Door-Lift, Inc., 558 So.2d 43 (Fla. 1st DCA 1989); Severini v. Pan American Beauty School, Inc., 557 So.2d 896 (Fla. 1st DCA 1990); and Lindsay v. TVS Trucking Co., 565 So.2d 864 (Fla. 1st DCA 1990). We must determine, *871 then, whether the JCC failed to heed valid rules of law set out in these cases.
In Philpot, the court's recitation of the facts indicates that the claimant was "injured on August 9, 1984" when a highway exit sign fell on him. 541 So.2d at 681. The issue before the court concerned whether the claimant's post-traumatic neurosis and post-concussion syndrome diagnosed after the industrial accident caused a work-related disability. The opinion in Severini makes it clear that there was no dispute that the claimant suffered an industrial accident in December of 1987. The issue addressed by the court in that case was causation for medical problems complained of after March of 1988 where the claimant suffered an intervening accident in February of 1988. Commenting specifically on the issue of causation as to claimant's medical condition after March of 1988, this court observed, as Mr. Ullman points out, "the judge may not reject unrefuted medical testimony of a party's expert witness without a reasonable explanation for doing so" (e.s.). 557 So.2d at 897. The court in Bray observed at the outset that the "record reflects that claimant fell at work on April 18, 1988," and suffered immediate observable injuries. 558 So.2d at 44. Thus, and again in the words of the court, "the occurrence of an accident at work is undisputed." Id. at 47. This court reversed a finding by the JCC that claimant's medical condition was unrelated to his employment. Finally, in Lindsay the facts reveal that claimant, a delivery truck driver, fell on a loading dock on August 16, 1987, and reported the injury to his employer upon his return to headquarters the next day. The issue before the court was medical causation, specifically whether the August 16, 1987, injury aggravated a preexisting condition. Claimant's doctor offered testimony favorable to him on a question of causation. Nonetheless, the JCC rejected such testimony. This court reversed, finding, "[c]ausation of non-observable injuries is essentially a medical question." 565 So.2d at 866.
Ullman supplements his claim of unrefuted medical testimony by pointing out that Dr. Williamson was never asked whether his opinion would have changed if the history provided had been changed to reflect the matters proven by the E/C at the hearing, and observed by the JCC in his order. According to Ullman, this kind of failure has been previously found by the court to require reversal of a denial of a workers' compensation claim in Calleyro v. Mt. Sinai Hospital, 504 So.2d 1336 (Fla. 1st DCA 1987), rev. denied, 513 So.2d 1062 (Fla. 1987).
Our reading of these cases, in each of which this court reversed a finding adverse to the claimant, reveals that each case turned on the problems inherent where a JCC substitutes his judgment in place of the unequivocal opinion of an expert physician on an issue particularly within the province of the expert. This observation is supported by reference to Calleyro. In that case it was undisputed that claimant suffered an on-the-job accident on July 1, 1982, resulting in a broken ankle. Claimant spent several months in a cast, and was unable to work for quite some time. Subsequent to the accident, she became anxious and depressed and was ultimately diagnosed by a psychiatrist as being psychiatrically disabled as a result of the accident. The JCC, however, rejected the psychiatrist's opinion, finding no logical reason to relate the doctor's findings to the accident of July 1, 1982. The issue before the court on appeal was medical causation, and this court reversed, finding error in the JCC's rejection of unrefuted medical testimony on an issue particularly susceptible to explanation by a medical expert.
In the cases cited by Ullman this court appears to have crafted the rule that he now urges upon us, but each of these cases involved an issue of medical causation, and not the question vel non of the occurrence of an industrial accident. The question of whether such an accident occurred, as contrasted with the issue of medical causation in the face of the undisputed occurrence of an accident, is not, strictly speaking, a medical question. In other words, such a determination is not in our view particularly susceptible, at least in the general case, to expert testimony.
This observation brings us to a consideration of our decision in Faucher v. R.C.F. Developers, 569 So.2d 794 (Fla. 1st DCA *872 1990). In that case, the claimant, Mr. Faucher, contended that he injured himself on March 2, 1988, while lifting a bucket of heavy steel rollers as he was cleaning an area of his employer's shop. At the hearing, the employer demonstrated that the claimant had a history of at least two prior back accidents in which he had low back complaints similar to those complained of after March 2, 1988. The most recent of these two prior accidents occurred June 25, 1986. The judge of compensation claims found that Mr. Faucher reported an incorrect medical history to his physician, knowingly misled both the treating physician and the independent medical examiner, did not initially relate his back problems to the "alleged accident" of March 2, 1988, and finally, and most significant for purposes of the present case, "did not suffer an accident by injury that arose out of and in the course of his employment on March 2, 1988." 569 So.2d at 796. Accordingly, reasoned the JCC, the medical opinions which were predicated on a fraudulent history would not be binding on the finder of fact. The JCC therefore rejected the claim. It is plain to see that in Faucher, as in the present case, the JCC, having heard all the evidence, determined that the claimant did not in fact suffer an accident by injury in the course of his employment. Thus, the opinions of two physicians, purporting to relate a disability to the accident in question, were not, in the view of the JCC, binding.
This court, in a 2-1 decision, reversed, holding:
It is now well settled that a doctor's medical opinion cannot be disregarded by the judge of compensation claims because the judge finds that the history given such doctor by the claimant was either false or incomplete, unless appropriate questions are put to the doctor specifically inquiring about the effect of the false or omitted information on the doctor's previously expressed opinion. Jones v. Citrus Central, Inc., 537 So.2d 1123 (Fla. 1st DCA 1989); Carson v. Gaineswood Condominiums, 532 So.2d 28 (Fla. 1st DCA 1988); Curtis v. Florida Correctional Institute, 509 So.2d 1192 (Fla. 1st DCA 1987). See also, Morey v. Harper, 541 So.2d 1285 (Fla. 1st DCA), rev. denied, 551 So.2d 461 (Fla. 1989); Olsen v. Wellcraft Marine Corp., 540 So.2d 878 (Fla. 1st DCA 1989); Walker v. Allied Septic Tanks, 522 So.2d 456 (Fla. 1st DCA 1988); Jackson v. Dade County School Bd., 454 So.2d 765 (Fla. 1st DCA 1984); Allman v. Meridith Corp., 451 So.2d 957, 960 (Fla. 1st DCA 1984).
569 So.2d at 801. We must now determine whether this statement establishes a rule that remains valid and workable in these types of cases.[2]
Reference to the facts in the present case convinces us that ample precedent of both the supreme court and this court has fashioned the correct rule by which the JCC, as finder of fact, is to be guided. Accordingly, we recede from Faucher and its progeny,[3] and reaffirm our adherence to the traditional rule defining the role of the fact-finder in workers' compensation cases. We see no reason not to apply to contested workers' compensation actions the holding recently expressed by a unanimous supreme court in Easkold v. Rhodes, supra, n. 2. In Easkold, a civil case, the court found that the jury had it within their province to reject uncontradicted medical testimony which was "flawed by reason of the materially untruthful history given by the claimant." 614 So.2d at 498 (adopting dissenting opinion of Judge Wolf in Rhodes v. Easkold, 588 So.2d 267, 269 (Fla. 1st DCA 1991)).
As we have observed earlier in this opinion, the present case may be said to turn upon the JCC's determination of whether or not an industrial accident occurred. In reviewing the broad range of workers' compensation cases that come before this court, however, we cannot help but recognize that *873 the questions of occurrence of an accident, and medical causation, are often intertwined. We thus recognize that cases will arise in which even the question of causation is not a subject for determination solely by reference to medical testimony. See e.g., Gold Coast Paving Co., Inc. v. Fonseca, 411 So.2d 259 (Fla. 1st DCA 1982) (where the factual foundation for medical testimony is absent, such medical testimony lacks the necessary probative value to support a finding of causation); Dade Property Management, Inc. v. Lazo, 418 So.2d 393 (Fla. 1st DCA 1982) (where medical opinion is based upon "facts" which have no support in the record, such opinion does not constitute competent substantial evidence as to causation). In Easkold v. Rhodes, supra, n. 2, the supreme court reaffirmed a rule of liberal deference to the fact-finder in civil cases, asserting, "[E]ven though the facts testified to by (the medical expert) were not within the ordinary experience of the members of the jury, the jury was still free to determine their credibility and to decide the weight to be ascribed to them in the face of conflicting lay evidence." 614 So.2d at 498, quoting Shaw v. Puleo, 159 So.2d 641, 644 (Fla. 1964). In workers' compensation cases, as in civil cases, we are mindful of the need to encourage results that comport with logic and common sense, rather than results founded solely upon inelastic judge-crafted rules. The role of this court must be to guard against fanciful or arbitrary abuse of discretion in workers' compensation cases, and we will continue to do so by scrutinizing JCC findings under the light of the basic rule requiring competent substantial evidence in support of such findings. We now briefly review the case law, which, together with Easkold, we find to be controlling.
While the occurrence of an industrial injury, or a series of industrial injuries, was among the historical facts related by Mr. Ullman to his doctors, it is established that "[t]he opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion." Arkin Constr. Co. v. Simpkins, 99 So.2d 557, 561 (Fla. 1957). The proffer of expert opinion is not sufficient to eliminate the necessity of proving the foundation facts necessary to support the opinion. Harris v. Josephs of Greater Miami, Inc., 122 So.2d 561, 562 (Fla. 1960).[4]
In workers' compensation cases, the judge's findings must be sustained if permitted by any view of the evidence and its permissible inferences. Orange City Water Co. v. Barkley, 432 So.2d 698 (Fla. 1st DCA 1983). The JCC as finder of fact is not required to accept an opinion which is not supported by the facts of record. Mallon v. Florida Rock Industries, Inc., 568 So.2d 503, 504 (Fla. 1st DCA 1990). "The (JCC) may reject, in whole or in part, uncontroverted testimony which he disbelieves." Storage Technology Corp. v. Philbrook, 448 So.2d 42, 44 (Fla. 1st DCA 1984); see also, John Caves Land Development Co. v. Suggs, 352 So.2d 44, 45 (Fla. 1977) ("a fact finder is not required to accept uncontroverted testimony which he does not believe"). The record in this case, as specifically commented upon by the JCC, is devoid of physical evidence or testimonial corroboration of Mr. Ullman's version of the events. The judge of compensation claims is entitled to consider and evaluate all evidence, both lay and professional, and may give greater weight to physical evidence and lay testimony than to scientific opinions of experts. Jeffers v. Pan American Envelope Co., 172 So.2d 577 (Fla. 1965).
The foregoing cases, which properly define the JCC's role as finder of fact, also accord well with the standard jury instruction applicable to expert testimony in civil cases:
You may accept such opinion testimony, reject it, or give it the weight you think it deserves, considering the knowledge, skill, experience, training, or education of the *874 witness, the reasons given by the witness for the opinion expressed, and all the other evidence in the case.

Fla.Std.Jury Instr. (Civ.) 2.2(b) (emphasis added).
The jury instruction, in turn, conforms with the view long taken by our supreme court:
(The jury is free) to accept or reject the testimony of a medical expert just as it may accept or reject that of any other expert. See Bailey v. Sympson, (Fla. DCA 3rd, 1963) 148 So.2d 729; Ingle v. Cochran, (Fla. DCA 1st, 1963) 151 So.2d 63, and Goldstein v. Walters, (Fla. DCA 2nd, 1961) 126 So.2d 759. This is especially true when the facts sought to be proved by expert testimony are within the ordinary experience of the members of the jury. In such cases the conclusions to be drawn from such facts will be left to the jury. Mills v. Redwing Carriers, Inc., (Fla. DCA 2nd, 1961) 127 So.2d 453.
Shaw v. Puleo, 159 So.2d at 641, 644 (Fla. 1964).
In the present case, neither Dr. Folkman nor Dr. Williamson has given an opinion that an industrial accident occurred. Rather, both have related the history provided by Mr. Ullman. That a doctor may have assumed the occurrence of an accident should not supplant the claimant's burden of proof that such an accident indeed occurred. See Tampa Bay Moving Systems, Inc. v. Frederick, 433 So.2d 628, 630 (Fla. 1st DCA 1983) ("the (JCC), not a doctor, is the finder and adjudicator of fact ...").
This court does not retry workers' compensation claims at the appellate level, nor do we substitute our judgment for that of the JCC on factual issues supported by competent substantial evidence. Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983). In this case, the JCC's consideration of whether an accident, or a series of work-related incidents, occurred, as related by Mr. Ullman, depended not solely upon an evaluation of medical testimony, but upon a review of Mr. Ullman's own testimony. The judge of compensation claims, as the trier of fact, has the right to determine the credibility of witnesses, including the claimant. Irving v. City of Daytona Beach, 472 So.2d 810 (Fla. 1st DCA 1985). We conclude, therefore, that the JCC's finding that Mr. Ullman's back complaints do not relate to an industrial accident, and, indeed, that no industrial accident occurred, is supported by competent substantial evidence.
Ullman also argues that his evidence established "a logical cause for his injury, namely the hard physical labor he performed for the appellee." He urges that the burden then shifted to the E/C to show a more logical cause, again citing Bray v. Electronic Door-Lift, Inc. This court in Bray did find the logical cause doctrine to be "applicable." 558 So.2d at 46. As previously noted, however, the Bray case presented no issue as to whether or not an industrial accident had taken place. In reciting the so-called "logical cause doctrine," the court in Bray relied upon Wilhelm v. Westminster Presbyterian Church, 235 So.2d 726, 728 (Fla. 1970), in which the supreme court observed, "the fact of a serious injury is conclusively shown." See also, Johnson v. Koffee Kettle Restaurant, 125 So.2d 297, 299 (Fla. 1960) ("... when an injury is conclusively shown ..."). The doctrine upon which Ullman relies would betray its very name, were we to illogically require its application to facts that do not prove a work-related accident.
It follows, then, that a JCC's determination, when supported by competent substantial evidence, that an industrial accident has not occurred must be, and in this case is, AFFIRMED.
BOOTH, SMITH, JOANOS, BARFIELD, MINER, ALLEN, WOLF, WEBSTER, MICKLE and LAWRENCE, JJ., concur.
ZEHMER, C.J., and ERVIN, J., concur in result.
NOTES
[1] This particular notice did not result in Ullman's dismissal. Another unrelated disciplinary hearing a month after the disciplinary hearing in the present case resulted in appellant's dismissal.
[2] Although the rule now under review was expressly applicable only to a judge of compensation claims, this court has since applied it in a civil case. Rhodes v. Easkold, 588 So.2d 267 (Fla. 1st DCA 1991), quashed, Easkold v. Rhodes, 614 So.2d 495 (Fla. 1993).
[3] Finney v. Agrico Chemical, 599 So.2d 1359 (Fla. 1st DCA 1992); Cozzens v. St. Joe Container Co., 596 So.2d 135 (Fla. 1st DCA 1992); Nance v. School Board of Polk County, 582 So.2d 134 (Fla. 1st DCA 1991).
[4] Of course not every error or omission in the factual predicate upon which an expert bases an opinion necessarily justifies disregarding that expert's opinion. On the other hand, some facts are so critical to the validity of the opinion as to dictate the opposite result, namely, rejection of the expert opinion. In a given case, therefore, the question ultimately will resolve itself into a judgment call by the trier of fact; and, on review, the exercise of this judgment should be entitled to the same presumption of correctness as other factual conclusions made by the trier of fact, and should not be reversed except upon a showing of abuse of discretion.