867 So.2d 479 (2004)
Elsie PRATHER, Appellant,
v.
PROCESS SYSTEMS, Wal-Mart Amstaff/Greers, et al., Appellees.
No. 1D01-4925.
District Court of Appeal of Florida, First District.
February 13, 2004.
Rehearing Denied March 11, 2004.
*480 T. Rhett Smith, Esq. and Teresa E. Liles, Esq., Pensacola, for Appellant.
Frank C. Bozeman, III, Esq. and Colleen Cleary Ortiz, Esq. of Bozeman, Jenkins & Matthews, P.A., Pensacola, for Appellees.
PER CURIAM.
Claimant, Elsie Prather, appeals an order of the Judge of Compensation Claims ("JCC"), which denied her petition for disability and medical benefits. In denying claimant's petition for benefits, the JCC determined that "[b]ased on all the testimony presented, the petitioner's testimony lacks candor and is not reliable." The issue presented is whether the order denying claimant's petition for benefits is supported by competent, substantial evidence. Concluding that the JCC properly and thoroughly performed his obligation as the finder of fact, we affirm.
In workers' compensation cases, the JCC's findings must be sustained if supported by any view of the evidence and its permissible inferences. Ullman v. City of Tampa Parks Dep't, 625 So.2d 868, 873 (Fla. 1st DCA 1993) (citing Orange City Water Co. v. Barkley, 432 So.2d 698 (Fla. 1st DCA 1983)). "The [JCC], as the trier of fact, has the right to determine the credibility of witnesses, including the claimant." Id. at 874 (citing Irving v. City of Daytona Beach, 472 So.2d 810 (Fla. 1st DCA 1985)). It is also within the province of the JCC to determine whether the claimant's medical history is credible or not, and the JCC may give greater weight to lay testimony than to scientific opinions of experts. GTE v. Miller, 642 So.2d 1188, 1189 (Fla. 1st DCA 1994) (citing Ullman, 625 So.2d at 873; Jeffers v. Pan Am. Envelope Co., 172 So.2d 577 (Fla.1965)).
In denying claimant's petition for benefits, the JCC also rejected the expert medical advisor's recommendation in favor of claimant. Regardless of whether or not the JCC erred in rejecting the expert medical advisor's opinion, the JCC set forth a second ground for denying claimant's application for benefits. The order stated that, based on all the testimony, the JCC was denying the claim as the result of claimant's lack of candor and reliability. See GTE, 642 So.2d at 1189 ("[I]t was not the province of the physicians to determine whether the claimant's history was credible. That determination was for the judge.") (citing Tampa Bay Moving Sys., Inc. v. Frederick, 433 So.2d 628, 630 (Fla. 1st DCA 1983); other citation omitted); Ullman, 625 So.2d at 874. Thus, because the JCC can give greater weight to lay *481 testimony than to the scientific testimony of experts, and because his finding regarding claimant's lack of credibility is supported by competent, substantial evidence, including claimant's failure to inform numerous doctors, including Dr. Szmurlo, Dr. Doheny, and Dr. Sellers, about her previous psychiatric medical history, the JCC did not err in rejecting the claimant's petition for benefits. The JCC based his finding regarding claimant's credibility on her testimony and the testimony of the doctors as a whole, which he had a right to do. See Chavarria v. Selugal Clothing, Inc., 840 So.2d 1071, 1076 n. 3 (Fla. 1st DCA 2003) ("Even in cases which must be resolved upon a true appraisal of testimony of medical experts, the deputy commissioner's findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them.") (quoting U.S. Cas. Co. v. Md. Cas. Co., 55 So.2d 741, 745 (Fla.1951)); GTE, 642 So.2d at 1189; Ullman, 625 So.2d at 874.
AFFIRMED.
ALLEN and LEWIS, JJ., concur; ERVIN, J., dissents with written opinion.
ERVIN, J., dissenting.
The issue before the judge of compensation claims (JCC) was whether claimant's compensable, workplace injury was the major contributing cause (MCC) of her major depression. The majority affirms the JCC's rejection of the opinion of the expert medical advisor (EMA) for the reason that, based on the totality of the evidence, including the testimony of claimant, the order is supported by competent, substantial evidence. The majority's deference to the JCC's decision appears at odds with the legislature's clearly expressed preference that opinions of EMAs be generally accepted. I cannot agree that after the passage of the EMA procedure, codified in section 440.13(9)(c), Florida Statutes (1995), a judge now retains the nearly unfettered power to disapprove an EMA's opinion in circumstances, such as those at bar, in which the advisor fully took into consideration all inconsistencies in the medical history given him by the claimant and still concluded that her workplace injury was the MCC of her mental condition.
What has occurred in the present case is that after considering virtually the same evidence the EMA reviewed, the JCC found, contrary to the EMA, that claimant's reports of pain were unbelievable, and for that reason rejected the opinion. In my judgment, this court's affirmance of the JCC's rejection effectually eviscerates the EMA process and ignores a body of case law this court has developed in defining the respective roles of EMAs and JCCs in resolving conflicting medical opinions. At this point, a brief recitation of the facts would be helpful to an understanding of the standard I espouse in reviewing an order that approves or rejects an EMA's opinion.
Claimant, Elsie Prather, suffered her workplace injury on May 10, 1995, resulting in carpal tunnel syndrome in her left hand. She continued to complain of left-hand pain after a surgical release. On April 11, 1997, claimant was involved in a non-compensable motor-vehicle accident and presented at a hospital emergency room complaining of resulting neck and back pain. Thereafter, continuing to complain of persistent pain and depression, she was given an independent medical examination (IME) in August by the psychiatrist of her choice, Dr. Steven Doheny, who diagnosed her with major depression and pain disorder stemming from her 1995 industrial injury. Following its receipt of Dr. Doheny's report, the employer arranged for a psychiatric evaluation of claimant with its IME psychiatrist, Dr. *482 Scott Benson, who, while agreeing with Dr. Doheny that claimant suffered from major depression and pain disorder, disagreed that the workplace accident was the major contributing cause of the mental condition, but was rather only one of several contributing causes, including a combination of her wrist and non-compensable back injuries.
As a result of the conflict in medical opinions, an EMA was appointed, pursuant to the provisions of section 440.13(9)(c). Following his examination of claimant, the EMA, Dr. Peter Szmurlo, opined, as had Dr. Doheny, that claimant's industrial accident was the MCC of her depression and pain disorder. Dr. Szmurlo's opinion was based on an incomplete medical history given him by claimant, which omitted her treatment for depression before her employment injury, and, after the injury, her involvement in a motor-vehicle accident. When informed of these omissions, Dr. Szmurlo reviewed claimant's complete records, and subsequently persisted in the same opinion.
Despite the record's disclosure that the EMA's final opinion was not the product of his overlooking or ignoring evidence supporting a contrary view, the JCC rejected the opinion, essentially because, unlike Dr. Szmurlo, he disbelieved the claimant, concluding that she had greatly exaggerated her reports of pain and deliberately falsified her medical history; therefore, he considered the EMA's opinion had become "tainted." The JCC's order ignored the explanations by Drs. Doheny and Szmurlo that the claimant's mental condition made her a poor historian because it affected her memory and ability to recite historical facts.
The order also ignored this court's decisions construing the effect of section 440.13(9)(c).[1] Among other things, we noted that an EMA's opinion has "`nearly conclusive effect.'" Walgreen Co. v. Carver, 770 So.2d 172, 174 (Fla. 1st DCA 2000) (quoting Pierre v. Handi Van, Inc., 717 So.2d 1115, 1117 (Fla. 1st DCA 1998)). It creates a presumption that can be overcome only by evidence of "`a quality and character so as to produce in the mind of the JCC a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established [and therefore the falsity or inaccuracy of the expert medical advisor's opinion].'" Id. (quoting McKesson Drug Co. v. Williams, 706 So.2d 352, 353 (Fla. 1st DCA 1998)).
Section 440.13(9)(c), giving the EMA's opinion conclusive effect unless clear and convincing evidence to the contrary is presented, appears to be a legislative endeavor to alter drastically the trial arbiter's role in weighing and evaluating the evidence, and to transfer from the judicial arbiter to the EMA decision-making authority, within the limited legislative conditions expressed, in resolving conflicting medical evidence. If, in reviewing an EMA's opinion, a JCC is conscientious in carrying out the legislative goal, he or she would do well to heed this court's instructions in Chavarria v. Selugal Clothing, Inc., 840 So.2d 1071, 1082 (Fla. 1st DCA 2003), made in the context of our review of orders resolving conflicting medical opinions, stating that such orders will be upheld if it appears from the record the judge neither ignored nor overlooked opinions to the contrary. Therefore, I consider that once it appears from the record that the EMA, in choosing between conflicting medical opinions, did not overlook *483 or ignore competing opinions, and was fully apprised of a claimant's complete medical history, the EMA's opinion must be approved if supported by any evidence, despite the existence of evidence in the record supporting a contrary opinion.
All of the decisional law relied upon by the majority in affirming the JCC's order, including Chavarria, is clearly distinguishable in that none involved, as here, the review of an EMA's medical opinion. The majority also appears to suggest that a lay witness's testimony can be relied on to determine whether a workplace accident was the MCC of an employee's mental condition. It may not. Although this court, in Closet Maid v. Sykes, 763 So.2d 377, 382-83 (Fla. 1st DCA 2000), recognized that the MCC of certain types of injuries or conditions may be proven by lay testimony if they are susceptible of observation or by some other means of sensory perception, it particularly observed that medical evidence was necessary to establish that an industrial accident caused a non-observable psychiatric illness.
Similar to the issue of whether a judge may rely on his or her own personal observations in assessing whether an employment accident was the MCC of a non-observable medical condition, this court has held that a JCC may not reject an EMA's opinion that a claimant was suffering from a major mood disorder that rendered her totally disabled from a psychiatric standpoint, based solely upon the JCC's personal observations of the claimant at the hearing and in a surveillance video. Allen v. Protel, Inc., 852 So.2d 916, 920 (Fla. 1st DCA 2003).
Finally, this is not a case, such as Wuesthoff Memorial Hospital v. Schmitt, 777 So.2d 465 (Fla. 1st DCA 2001), or Jacaranda Manor v. Randolph, 755 So.2d 781 (Fla. 1st DCA 2000), in which the conflicting opinion of a physician was accepted over that of the EMA, because of the former's greater experience in the particular area of medicine, or greater knowledge and familiarity with a claimant's condition. In the case at bar, the EMA examined the claimant on four different occasions, performed a battery of tests, and conducted a thorough review of her medical records, whereas Dr. Benson, the employer's IME physician, examined the claimant once, and nothing in the record reveals, nor was a finding made, that Dr Benson's expertise in the field of psychiatry was greater than that of Drs. Szmurlo and Doheny.
In reading through the JCC's order, I find in it far more than a simple distrust of the candor of the claimant's testimony, but a distrust as well of the entire statutory machinery creating the EMA process. In his 31-page order, the judge devoted several pages to an attack on such procedure and how it undermines the JCC's ability to adjudicate conflicting medical evidence. For example, the order acknowledged the nearly conclusive effect of an EMA's opinion, by stating:
Although designated by the legislature as an "advisor" the EMA does not actually function as an advisor to the JCC because his opinion is statutorily presumed to be correct. In other words, the EMA's opinion is not advisory; it is binding. Under this process the expert medical "advisor" is transformed into an expert medical "judge" who then becomes the final arbiter of disputed facts and opinions presented in a workers' compensation proceeding.
In another passage of the order, the JCC commented: "It has become increasingly apparent that the EMA process does not work and should be abandoned." He continued, "Often the opinion of the EMA results from the physician's `phylosophy' [sic] of psychiatry and his understanding *484 of such matters as MMI and permanent work restrictions. The actual examination of the injured employee is a mere formality to secure selected evidence to support a decision that was made well before it took place." The JCC's diatribe concluded with the recommendation that the EMA procedure be replaced with that which preexisted the 1990 Act, permitting the JCC to appoint a physician to resolve conflicting medical testimony. In my view, the judge's admitted contempt for the EMA process brings into serious question his ability to function as a fair and impartial arbiter of the issues before him. Cf. Alamo Rent-A-Car v. Phillips, 613 So.2d 56 (Fla. 1st DCA 1993) (holding that fundamental error had occurred based on various statements made by a JCC concerning an expert witness's credibility).
Because the legislative presumption of correctness accorded to opinions of EMAs was not honored by the order on review, I would reverse it with directions that the opinion be approved, and remand the case for a determination, not reached by the JCC, as to whether the claimant suffered a loss in wage-earning capacity as a result of her major depression, and, if so, her entitlement to indemnity benefits.
NOTES
[1] Section 440.13(9)(c) provides, in pertinent part: "The opinion of the expert medical advisor is presumed to be correct unless there is clear and convincing evidence to the contrary as determined by the judge of compensation claims."